Littell v. Grady et al.

## LITTELL V. GRADY ET AL.

1. FORCIBLE ENTRY AND DETAINER:  *Object of the Statute.*

The object of the remedy of forcible entry and detainer, is not to determine rights of property, but to maintain the peace, and prevent persons, with or without title, from assuming to right themselves by force.

2. MORTGAGES:  *Power of sale must be executed fairly and impartially.*

Less than actual fraud in the sale of mortgaged property, will justify a Court of Chancery in setting aside the sale.  Equity watches with much jealousy deeds of trust and mortgages containing a power of sale *in pais;* and if the power be executed with partiality to the creditor, and with unfairness and oppression towards the mortgagor, and to his injury, it will set aside the sale.

3. PARTIES:  *Defendants in bill to vacate mortgage sale:*

In a mortgagor's. bill to set aside a sale of the mortgaged property, for unfairness and oppression in the sale, the mortgage creditor, as well as the purchaser, should be made a defendant.

4. TRUSTS:  *Setting aside trust sale. Return of purchase money. Subrogation. Improvements..*

If a trustee's sale of the trust property be unfairly and oppressively made, and the purchaser knowingly aid in the oppression, the owner need not return or offer to return to him the purchase money in order to set aside the sale.  If the sale be set aside, the purchaser may be subrogated to the lien of the creditor.  Nor can the purchaser claim the value of, his improvements on land so purchased, unless the owner claims rents from him.  He may then be allowed for his improvements *pro tanto.*

APPEAL from St. *Francis* Circuit Court.
Hon. J. N. CYPERT, Circuit Judge.

*Tappan & Hornor,* for appellant.

Sales under powers in deeds of trust, etc., are a harsh mode of foreclosure.  They are scrutinized with great care,

and will not be sustained unless conducted with great fairness, regularity, and scrupulous integrity. They will be declared void for the slightest unfairness, or excess, or for anything that prevents competition. *Perry on Trusts, sec. 602; Longworth v. Butler, 3 Gilman, 32; 1 Hilliard on Mortgages, 131; Jones on Mortgages, sec. 1906.*

The sale was void, because—

1st. The amout due was not fixed, but the subject of controversy. *Jones on Mortgages, sec. 1776; Perry on Trusts, sec. 602, x.; Sanford v. Flint, 24 Mich., 16; Bloom v. Rensselaer, 15 Ill., 503.*

2d. It was made in violation of an agreement to extend time. *Schoonover v. Pratt., 25 Id., 457.*

3d. Appellant had offered, through another, to pay, and it was not paid because mortgagee could not fix amount of debt. *5 Leigh, 370; 1 Gilmer, 230.*

4th. The sale was hurried; land sold at eleven o'clock, when few were present, to accommodate purchaser. *21 Ark., 585.*

5th. Cash was demanded on the spot, from all except Grady, and no notice given that such demand would be made. *Penn v. Tollison, 20 Id., 652.* Very slight proof of fraud or unfairness will set aside a sale. *Perry on Trusts, sec. 602, x; Jones on Mort., secs. 1909-11-13.* If the trustee acts in bad faith, or proceeds in an irregular or oppressive manner, the sale is void. *Perry on Trusts, sec. 602, W.; Goode v. Comfort, 39 Mo., 325.* There were few or no purchasers present. *Perry on Trusts, sec. 502, W.; Richards v. Holmes. 18 How., 143.*

6th. The price was grossly inadequate.

*Dunn & Howes*, for appellees.

1st. No offer or tender was ever made by appellant, to

pay the debt, nor to refuund the purchase money. "He who seeks equity must do equity."

2d. "If the amount secured by the mortgage can be ascertained by calculation, there is no objection to a foreclosure under the power." *Jones on Mortgages, sec.* 1776. The proof fails to sustain any agreement to postpone.

3d. The amount due was fixed. The mortgage *fixed* it at $314.

4th. The sale took place between legal hours. Appellant was present, but did not object to the *hour*.

5th. Trustee had a right to demand *cash. Bergen* v. *Bennett,* 1 *Caine's Cases, p.* 1.

EAKIN, J. The history of this case, in its progress, is somewhat unique. A. L. Grady sued Philander Littell, under the Statute (1874-5, *p.* 196), for a forcible entry upon and detainer of a quarter section of land, gave bond, and was put in possession. Littell filed an answer in two paragraphs. The first denied plaintiff's right of possession, and claimed it for defendant. The second denied plaintiff's title. He also filed a cross-bill against plaintiff and others, who were members of a mercantile firm, showing that the plaintiff claimed his title by purchase at a sale made by Prewitt, one of the defendants in the cross-bill, and a member of the firm, under a deed of trust executed by the defendant to Prewitt, to secure a debt due the firm. Detailing the circumstances, he charges that the sale was made fraudulently, in such manner as to be oppressive and unfair; and that the plaintiff, Grady, participated in the design, and bought the land at a grossly inadequate price. Wherefore, he prays that the sale may be set aside, and plaintiff's deed cancelled, as a cloud upon his title, and for general relief.

Littell v. Geady et al.

The court, at first, sustained a demurrer to the second clause of the answer, and to the cross-complaint, and denied the motion to transfer, leaving the issue standing upon the right of possession alone, under the charge of forcible entry and detainer. This was correct practice. The Statute above referred to, section 19, expressly provides that in trials under its provisions, the *title* shall not be adjudicated upon, or given in evidence, except to show the right *to the possession,* and its extent.

The special object of the summary remedy of forcible entry and detainer, is to keep the peace; not to determine rights of property. It is to prevent any and all persons, with or without title, from assuming to right themselves with strong hand, after the feudal fashion, when peaceable possession cannot be obtained, and to compel them to the more pacific course of suits in court, where the weak and strong stand upon equal terms. Upon complaint that this had occurred, the law, as it then stood, without hesitation applied the remedy, *in limine;* ejecting the presumtuous offender, even from property to which he had the best title, unless he could also show the better right to the immediate possession. He was not allowed to plead such superior title, or show it in evidence for his justification, except incidentally, as it tended to disclose his better right to the immediate possession at the time the forcible entry was made.

1. FORCI-
BLE ENT-
RY AND
DETAINER.
Object of
the reme-
dy.

It would equally contravene the policy of the law, wholly defeating its primary object, if one, merely having grounds to invoke the aid of a court of equity to set aside a legal title, might, with impunity, enter by force, and interpose his equitable right as a shield against the consequences of a forcible entry. For in such an action the title cannot be adjudicated upon at all, save as aforesaid.

The cause with the issue thus made as to the right of

possession, was continued, the other issues having been properly excluded.

At a subsequent term, the plaintiff, by leave of court, withdrew his demurrer to the cross-complaint, and consented that the cause might be transferred to the equity docket, and heard upon its legal and equitable merits. This was done, and time given to answer. There was no further litigation as to the forcible entry. The effect of the consent evidently was to change the entire nature of the suit, to admit the litigation and final determination of the title, just as if the cross-complaint had been an original bill The matter of the change was not jurisdictional, and the consent was such as the court might permit, Its effect was to reverse the parties and change the aspect of the cause from an action of forcible entry by Grady against Littell, to an equitable suit by Littell against Grady, to set aside a deed inequitably obtained, and restore the former status of complainant. And so it should have been considered throughout. No new parties were actually made. The members of the firm, including Prewett, are named as defendants in the bill, but none of them answered, nor do they appear to have been served with notice.

The answer of Grady denies all unfairness or fraud in the sale under the deed of trust, at length and in detail. Its effect is to claim that the sale was proper, and authorized by the deed of trust; that he was an innocent purchaser, and that there was nothing improper in the sale for which he should be held accountable. He appends a demurrer to the bill for want of equity, prays that it be dismissed, and for all other proper relief.

The cause was heard upon the pleadings, exhibits and evidence. The Chancellor, as recited in the decree, "found that the *allegations of fraud* were not sustained by the evidence," "and declared that there was no other point at

issue in the cause.'' The bill was dismissed, and it was ordered that Grady retain possession. Grady having afterwards died, this appeal is now presented against his heirs, and personal representatives.

Upon a careful review of the evidence, in connection with the pleadings, we cannot find such preponderating proof of actual fraud, based upon deceit, misrepresentation, or craft, as would justify us in deciding that the Chancellor erred upon this special point in his finding. But we think this too narrow a view to support the decree, and that there were other very material points at issue in the cause.

Deeds of trust and mortgages, with powers to be executed *in pais*, belong to a class of instruments which are watched with much jealousy by Courts of Chancery. Those who make them, are often, indeed most generally, under a pressure for money or credit, and somewhat at the mercy of those who afford accommodations. They cannot, as we think this case well illustrates, always protect themselves against oppressive, unjust, and unfair executions of the power, which may be within the letter of the trust, and which, amongst parties dealing on equal terms, would not amount to actual fraud. Parties who execute these powers are properly held to ''*uberrima fides*,'' in view of the danger of oppression, and the Courts of Chancery have been used to interfere to prevent any unnecessary sacrifice, or unfair disregard of the rights of the debtor. Where the trustees or beneficiaries do not wish to become the subjects of this jealousy, and are diffident of enduring the test, they may always invoke the aid of equity, and foreclose under its supervision. It is always the safe plan for all parties.

''Sales under powers,'' says Mr. PERRY ( *Trusts, sec.* 602, X), ''in deeds of trust, or mortgages, are a harsh mode of foreclosing the rights of the mortgagor. They are scrutinized by courts with great care, and will not be sustained

2. MORT-
GAGES:
Power of
ale must
be execu-
ted fairly
an d im-
partially.

unless conducted with all *fairness*, regularity, and *scrupulous* integrity. Upon *very slight* proof of fraud, or unfair conduct, or of any departure from the terms of the power, they will be set aside." (See authorities cited.)

Lord ELDON, in the case of *Downes* v. *Grazelrook*, 3 *Merivale*, 207, went so far as to say, that a trustee for sale is bound to bring the estate to the hammer;" under, *every possible advantage* to his *cestui que trust*," who in that case was the grantor or debtor. Perhaps that is too severe a requisition, in its literal sense, but reâsonably taken, it announces the doctrine universally received.

Mr. DILLON has treated this subject in two articles, published in the numbers of the American Law Register, for September and October, 1873, in which he has collected a great mass of authorities. The particular question now before us, is discussed in the latter number. He says that the trustee is bound to look to the interests of *both* parties in the execution of a power of sale. He must act reasonably for the interests of the debtor, as well as the creditor, and must be impartial between them. He should not permit the creditor to *force* the sale at an inadequate price in the absence of other bidders, and should *postpone* the sale, if necessary, to obtain a fair price." He quotes C. J. SHAW, 3 *Met.*, 311, saying that: "In exercising the power, the mortgagee becomes the trustee of the debtor, and is bound to act *bona fide*, and to adopt all reasonable modes of proceeding, in order to render the sale the most beneficial *to the debtor*." Also the remarks of Vice Chancellor BRUCE, in *Mathie* v. *Edwards*, 2 *Col.*, 480, who says: "I apprehend, that a mortgagee having a power of sale, cannot, as between him and the mortgagor, exercise it in a manner merely arbitrary, but is, as between them, bound to exercise some discretion, not to throw away the property, but to act in a prudent, and business-like manner, with a view to

obtain as large a price as may, fairly and reasonably, with due diligence and attention, be, under the circumstances, attainable." And on general principles, the same rule would apply in a contest between the mortgagor and a pur-chaser under the power, with notice of the circumstances.

In accordance with these views, stands the case of *Seesel et al.* v. *Ewan et al.*, reported in 35 *Ark.*, 127. There the sale was made by the trustee, in accordance with the wishes of the grantor and debtor, and was attacked by other credi-tors, having no liens on the property when sold. The court sustained the sale, saying : "The trustee should have sold the property *to the best advantage of the grantor in the deed*, and those claiming under him, subject to the creditor's right to his secured debt." He was held not to be a trustee for general creditors, and that he might follow the wishes of the grantor in the sale, who would have control of the surplus.

It will be readily seen, that in all cases the trustee will best subserve the interests of the creditor by making such sale, as would be in price, most advantageous to the debtor. Incidentally, and to the extent of the debt only, the credi-tor is a *cestui que trust* under the power. Beyond that, and generally, the person entrusted with the power of sale, owes a fiduciary duty to the real owner of the land, to secure to him all advantages reasonably within his power, consistent with his trust. It is the plain, sensible dictates of a spirit of fair dealing between man and man.

From these considerations, it is plain that the Chancellor erred in supposing that he could grant no relief in the absence of proof of fraud. Less than fraud will suffice, unless we consider want of fidelity to a trust, in all cases, a fraud of itself.

The trustee in this case seems to have acted wholly in disregard, not only of the interests, but of the feelings of

the debtor.   The debt had not been ascertained, and the firm of which he was a member, seems to have evaded the efforts of the debtor to arrive at a correct ascertainment of the true amount.   The debtor, through a friend who was able to advance the money, and would have done so, could have paid the money and stopped the sale, if a settlement had been made and the debt satisfactorily adjusted.   It has never yet been done.   The sale was advertised, pending negotiations.   The debtor remonstrated, and (as he says in his deposition, and which is not thoroughly contradicted), the trustee agreed that the sale should be deferred to another day.   Nevertheless, upon the day for which notice had been given, the trustee, professing to act under peremptory instructions from his own firm, insisted upon proceeding with the sale.   He proceeded to the ground, accompanied by defendant, Grady, in a buggy.   The complainant had gone there expecting a postponement, and unprepared to pay the money.   The trustee announced that he would not receive any bid, except from parties prepared to pay down, in cash, upon the ground.   There was no other bidder present, besides Grady.   Only five or six others present in all, who had been invited to attend, to give a semblance of a public sale.   The complainant requested Grady not to buy, making him acquainted with the circumstances, and declaring his intention to contest the sale in the courts.   Grady said he knew that complainant had been badly treated in the matter, but that was a matter between the debtor and trustee.   He urged upon the trustee, repeatedly, to hurry up the sale.   The trustee, inflexible to complainant, was quite complaisant to the intended vendee. He did hurry up the sale.   It took place about 11 o'clock, six miles from Forrest City, in the country.   Grady made the only bid, $315.   Whether that was more or less than the sum due, cannot yet be known.   No money was paid on

the ground, nor demanded. Grady and the trustee went off together, in a buggy, as they came. The money was afterwards paid in Forrest City, and a deed made there. The land did not bring one-fourth its value.

Perhaps no one of all these acts was intended to be fraudulent, or thought to be so by the actors. Perhaps they thought they were only availing themselves of legal rights. But it was hard measure for complainant, who had for some time had a friend ready to pay the debt; who had honestly and earnestly endeavored to ascertain its amount, for the purpose, and who, there is good reason to believe, attended at the place, in the just expectation of a postponement, unprepared to pay anything on the ground. The proceedings were arbitrary, unkind, unjust, and detrimental to complainant; and the purchaser made himself a party to them with full knowledge of the hardship.

The result was, the firm got into its hands the full amount it claimed, whether justly or unjustly; Grady got a very cheap bargain in lands; and the complainant had his property taken from him without any necessity. It is very plain that no sale at all need have been made, if the firm, or Prewitt, acting for it, had in good faith co-operated to fix the true amount of the debt.

Taking all the circumstances together, we think the Chancellor erred in dismissing the bill for want of equity.

Under the prayers for general relief on both sides, he might have ordered an account taken of the debt due, and of the actual market value at the time, of the funds used in paying taxes; and might have adjusted the rights of all parties; either making the repayment of the taxes, with interest a condition of setting aside the sale, and restoring the former condition; or, on application of the defendant in the bill, he might have proceeded to decree and execute a foreclosure, subrogating Grady to the extent of his purchase

68—38

money, (or less, if the debt be less), to the original lien of the firm. The firm should also have been brought in and made parties. We do not think it was incumbent on the complainant to offer to pay Grady his purchase money. Perhaps it was more than he owed. In any event, Grady, having knowingly lent his aid to an oppressive transaction, cannot thus involuntarily make the complainant his debtor, and hold his property until he be repaid. This is not required of complainant, in order to " do equity." The estate of Grady must be content with the subrogation to the lien, and to his claim for taxes, with interest. He is entitled to no improvements, unless there be a claim made against him for rents, during his occupation ; in which case he may be allowed improvements, *pro tanto.*

Reverse the decree, and remand the cause, with leave to amend the pleadings and bring in new parties, and for further proceedings, consistent with this opinion.