## MULLER v. McCANN *et al.*

No. 4978.   Opinion Filed July 13, 1915.

Rehearing Denied September 7, 1915.

(151 Pac. 621.)

1. **CONSTITUTIONAL LAW—Contracts—Impairment of Obligation of Contracts—What Constitutes.** The remedy subsisting in a state or territory when and where a contract is entered into and to be performed is a part of the obligation, and especially is that true when the particular remedy is agreed upon and clearly expressed in the contract; and any subsequent law of such state or territory which so affects that remedy as to substantially impair and lessen the value of the contract is in violation of section 10, art. 1, of the Constitution of the United States, which provides that no state shall pass any law impairing the obligation of a contract, and therefore void.

2. **MORTGAGES—Foreclosure—Sale.** Under section 4759 of Mansfield's Digest of the Laws of the State of Arkansas, which was in force in the Indian Territory before statehood, all sales of real property under mortgages and deeds of trust for less than two-thirds of the appraised value, and within less than one year from the date of the said appraisement, are void.

3. **SAME—Right of Mortgagees to Purchase.** Under the decisions of the Supreme Court of the State of Arkansas, which were effective in the Indian Territory before statehood, it was the established rule in equity that a mortgagee of real estate, with power of sale, was not allowed to purchase the property directly or indirectly for his own benefit at such sale, and if the sale be made with fraud or partiality to the creditor, and with unfairness and oppression toward the mortgagor, and to his injury, such sale would, on proper showing, be set aside.

4. **VENDOR AND PURCHASER—Bona Fide Purchasers—Who Are.** In such sales a person purchasing an interest in land takes with constructive notice of whatever appears in the several conveyances constituting the chain of title, and if anything, including quitclaim deeds, appears in such conveyances, sufficient to put a prudent man on inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of some right or title in conflict with that which he is about to purchase, it is his duty to make inquiry, and if he does not do so, he is guilty

of bad faith or neglect, and the law will charge him with the actual notice he would have received, if he had made it, and in such case he would not be entitled to protection as a **bona fide** purchaser.

(Syllabus by Robberts, C.)

*Error from District Court, Pittsburg County;*
*W. C. Liedtke, Judge.*

Action by H. J. Muller against Madeline McCann, *nee* Guillaume, and another. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

*Wm. S. Rogers* and *Robert N. McMillan,* for plaintiff in error.

*W. J. Horton* and *R. A. Smith,* for defendants in error.

Opinion by ROBERTS, C. This action was originally filed in the superior court of Pittsburg county, Okla., on the 12th day of September, 1911, and was thereafter, upon the abolishment of that court, transferred by operation of law to the district court of Pittsburg county, Okla. The action is to set aside a mortgage foreclosure deed, and also conveyance to second grantee, who claims to be a *bona fide* purchaser. The case was decided on general demurrers to the petition. In order to get a full understanding of the case, we submit the pleadings.

The allegations of plaintiff's petition are, in substance, as follows:

(1) That the defendant Madeline McCann is the same person as Madeline Guillaume hereinafter referred to, the said Madeline Guillaume having married McCann.

(2) That on the 2d day of August, 1907, the plaintiff was the owner of lot 8 in block 324, South McAlester, Ind. T., now McAlester, Okla., and on said date exe-

cuted to defendant Madeline McCann a mortgage covering said property to secure the payment of a note in the sum of $1,000, payable to said defendant. Said mortgage is in words and figures as follows:

"Know all men by these presents: That Henry J. Muller and his wife, of McAlester, I. T., for and in consideration of one thousand dollars to him in hand paid by Madeline Guillaume, of McAlester, I. T., the receipt whereof is hereby acknowledged, has granted, bargained, and sold, and does hereby grant, bargain, sell, and convey, unto the said Madeline Guillaume and her heirs the foll wing described lot or parcel of ground in the Choctaw Nation, Indian Territory, and the city or town of South McAlester, to wit: Lot numbered eight (8) in block numbered three hundred twenty-four (324). To have and to hold unto the said grantee, Madeline Guillaume, her heirs and assigns, together with all the appurtenances in fee simple forever.

"And I, for myself and my heirs, executors, and administrators, hereby covenant to and with the said grantee, Madeline Guillaume, her heirs and assigns, that I am lawfully seized in fee of the said premises, that they are free of all incumbrances, that I have good right to sell and convey the said property aforesaid, and that I will, and my heirs, executors, and administrators shall, warrant and defend the same against the lawful claims and demands of all persons whomsoever, and I, wife of the said ————, join in this conveyance, and for the consideration aforesaid, do hereby release and relinquish and quitclaim unto the said ————, heirs and assigns, all my right, claim, or possibility of dower and homestead in or out of the hereinbefore described premises.

"This grant and conveyance is subject, however, to such conditions that whereas, Henry J. Muller is indebted to the said Madeline Guillaume, in the sum of $1,000.00, evidenced by one certain promissory note of even date herewith, payable to the order of the said Madeline Guil-

laume, due on the 2d day of January, 1911, with interest at the rate of eight per cent. per annum, payable annually to the said Madeline Guillaume:

"Now, therefore, if the said grantor shall well and truly pay or cause the said note and all interest to be paid at maturity, then this grant and conveyance shall be taken and considered as null and void.

"It is expressly stipulated that the said grantor pay all taxes and assessments upon the premises within the time prescribed by law, and shall keep the buildings on said premises insured against loss or danger by fire in some approved fire insurance company; loss, in a sum not less than six hundred dollars, if any, payable to the said grantee, or heirs or assigns, as his or their interest may appear.

"It is further stipulated that if the said grantor shall neglect, fail, or refuse to pay such taxes, or to effect and maintain such insurance, the said grantee or his assigns may do so, and the sum so expended shall be taken as a part of the indebtedness, with interest at the rate of ten per cent. per annum, intended to be hereby secured.

"And it is further stipulated that if default be made in the payment of said note or the interest or the taxes, or in effecting the insurance or any part of either, or if waste be committed on or improvements are removed from the land without the written consent of the grantee or his assigns, the whole of the sums intended to be hereby secured to become immediately due and payable, and it shall be lawful for the said grantee, his agent or attorney, or his assigns, or their agents or attorneys, at any time after such default or acts, to sell the said premises or any part thereof at the outer entrance of the United States courthouse in McAlester, in the Central district, Indian Territory, at public auction, to the highest bidder, for cash in hand, after having given twenty days notice of the time, place, and terms of sale by publication in some newspaper published in the said district at Mc-

Alester, and to apply the proceeds of such sale, first, to the payment of costs and charges of such sale, including a charge not exceeding ten per cent. for attending and making such sale, second, to the payment of the indebtedness, with interest, and the remainder, if any there be, to be paid to the grantor, or his legal representative. And the recitals of the deed of conveyance by said grantee or his assigns shall be taken as *prima facie* true.

"And it is further provided that in case of foreclosure of this mortgage in the court that the said grantee or assigns shall be allowed a reasonable attorney's fee, to be fixed by the court and taxed as other costs.

The grantor herein waives the statutory right of redemption. .

"In witness whereof we have set our hands and seals this 2d day of August, 1907.

"HENRY J. MULLER."

(3) That on or about the 31st day of August, 1909, defendant McCann declared said debt under said mortgage due, and gave notice that she would, on the 21st day of September, 1909, sell said property under the power and terms of said mortgage for the purposes of satisfying said debt. Said notice was made a part of plaintiff's amended petition, and is in the words and figures following, to wit:

"NOTICE OF MORTGAGE SALE.

"STATE OF OKLAHOMA, COUNTY OF PITTSBURG—SS:

"Whereas, on the 2d day of August, 1907, H. J. Muller did execute to me his promissory note for the sum of $1,000.00 for borrowed money, due January, 1911, with interest at the rate of 8 per cent. per annum, payable annually, which said note is secured by a mortgage executed by the said H. J. Muller upon lot eight (8) in block three hundred and twenty-four (324) in the city of McAlester (formerly South McAlester, I. T.), Okla., which mortgage

provided that the said H. J. Muller pay the interest upon said note annually, and that in the event he should fail to pay the same annually then I might at my option declare the said note and interest all due and proceed to sell the said premises at public auction;

"And whereas, the said H. J. Muller has made default in the payment of the said interest as provided in said note and mortgage:

"Therefore, I do now declare the said debt to be due, and will on the 21st day of September, 1909, between the hours of 9 a. m. and 4 p. m., at the outer entrance of the building on Choctaw avenue, city of McAlester, Okla., used and occupied in the year 1907 as the United States courthouse for the Central district of the Indian Territory, the said building being now the Pittsburg county courthouse, sell to the highest and best bidder for cash in hand the above-described property, in accordance with the terms of said mortgage.

"Dated at McAlester, Okla., August 31, 1909.

"MADELINE GUILLAUME."

That, in pursuance of said alleged notice, defendant McCann proceeded to sell said real estate, and conducted a purported sale thereof to a nominal and purported bidder on said date, and afterwards, on or about the 21st day of September, 1909, made executed and delivered to said purported fictitious bidder, Irenus P. Keith, a deed purported to convey to said Keith the property herein involved for the alleged consideration of $1,200. That said deed is of record at page 101 of Book 6 of Deed Records in the office of the register of deeds of Pittsburg county, Okla. Said deed is made a part of plaintiff's amended petition, and is in the words and figures following, to wit:

"MADELINE GUILLAUME TO IRENUS P. KEITH.
"DEED.

"This instrument made, executed, and delivered this the 21st day of September, 1909, by and between Madeline Guillaume, first party, and Irenus P. Keith, second party, witnesseth:

"That whereas, H. J. Muller did for borrowed money, on the 2d day of August, 1907, execute to the first party hereto his certain promissory note for the sum of $1,000.00, which note was secured by a mortgage on lot 8 in block 324 in the city of McAlester, Oklahoma, then Indian Territory, which original note and mortgage was made a part of this instrument and are as follows, respectively:

"'SOUTH McALESTER, I. T., August 2, 1907.

"'No. ———.

"'Due Jan. 2, 1911.

"'Three years and six months after date we, or either of us, promise to pay to the order of Madeline Guillaume one thousand and no/100 dollars for the value received, with interest at the rate of eight per cent. per annum after date until paid, interest payable annually.

"'HENRY J. MULLER.

"'Post Office, McAlester.

"' $1,000.00.

"'First National Bank, No. 17429 South McAlester, I. T., credited by $80.00 August 30, 1908.

"'[Here follows the real estate mortgage from H. J. Muller to Madeline Guillaume heretofore set out.]'

"Whereas, the said H. J. Muller did make default in payment of the interest due on said note August 2, 1909, and did fail to pay same by which default the principal and interest became due and immediately payable, and the said H. J. Muller did fail to keep the improvements

on the said mortgage property insured as provided by the terms of said mortgage which failure rendered the said note and interest immediately payable;

"Whereas, first party hereto did on August 31, 1909, in the McAlester News Capital, a newspaper published at McAlester, Oklahoma, and daily from the said date until this date, advertise the said property for sale in accordance with the terms of said mortgage, which advertisement was as follows, to wit: . [Here follows the notice of mortgage sale by Madeline Guillaume by her attorneys, Elder & Eubanks, heretofore set out.] ;

"Whereas, first party did in accordance with the law in force in the Indian Territory at the time of the execution of said mortgage by petition to W. A. Treadwell, a justice of the peace of McAlester township, Pittsburg county, Oklahoma, have appraisers appointed to appraise, who did appraise the same after being duly sworn, and did make return of their appraisement, which petition for appointment of appraisers, appointment of appraisers, oath of appraisers and appraisement are as follows, to wit:

" 'BEFORE W. A. TREADWELL, JUSTICE OF THE PEACE, McALESTER TOWNSHIP.

" 'SALE OF MORTGAGED LANDS.

" 'Comes now Madeline Guillaume and shows to the above-named justice of the peace that she is the holder of a mortgage on lot eight in block three hundred twenty-four in the city of McAlester, Oklahoma, the said mortgage being executed by H. J. Muller.

" 'That the said H. J. Miller has made default in the payment of the interest on the same secured by said mortgage, and that the entire sum is now due, and your petitioner has advertised the said premises for sale under the terms of said mortgage, said sale to be held September 21, 1909.

" 'That under the laws in force in the Indian Territory at the time of the execution of said mortgage it was

necessary for the holder of said mortgage to apply to the nearest justice of the peace for the appointment of appraisers to appraise the said property before the said sale can be had.

" 'Wherefore your petitioner prays that three disinterested householders be appointed to appraise the said premises.   Madeline Guillaume.'

" 'McALESTER, September 4, 1909.

" 'The above and foregoing petition read and considered, and W. E. Busby, Geo. L. Metcalf, and S. H. Tanner, three disinterested householders of McAlester township, are appointed to make said appraisement as provided for by law at the time of the execution of said mortgage.

" 'W. A. TREADWELL, *Justice of the Peace.*'

" 'STATE OF OKLAHOMA, COUNTY OF PITTSBURG—SS.:

" 'We, W. E. Busby, George L. Metcalf, and S. H. Tanner, do solemnly swear that we will well and truly view and appraise the property that may be shown us under the appointment by W. A. Treadwell upon the application of Madeline Guillaume.

" 'S. H. TANNER.
" 'GEORGE L. METCALF.

" 'Subscribed and sworn to the 20th day of September, 1909.'

" 'APPRAISEMENT.

" 'Having been shown lot eight in block three hundred twenty-four as the property to be appraised, we estimate the value thereof to be $1,200.00.

" 'S. H. TANNER.
" 'GEORGE L. METCALF.'

"And whereas, first party did by her attorneys, in accordance with the terms of said mortgage and advertisement, offer said property for sale at the time and place stated in said notice, to the highest and best bidder

for cash, at which time and place second party hereto did bid the sum of twelve hundred ten dollars ($1,210.00), which was the highest and best bid offered, and which bid was accepted then and there:

"Now, therefore, for and in consideration of the said sum of $1,210.00, receipt whereof is hereby acknowledged, party of the first part has bargained, granted, sold, and conveyed, and by these presents doth hereby grant, bargain, sell, and convey, unto said party, all of lot eight in block three hundred twenty-four in the city of Mc-Alester, Oklahoma, together with all the tenements, hereditaments, and improvements thereon located or in anywise thereto appertaining.

"To have and to hold unto the said second party, his heirs and assigns, forever.

"And first party covenants with second party that she has good right to make this conveyance; that all of the statements herein set forth are true and correct.

"That first party further covenants that she will warrant and defend the title to the said premises unto second party, his heirs and assigns, against all claims and demands whatever.

"In witness whereof first party has hereunto set her hand this the day and year first above written.

"MADELINE GUILLAUME.

"[Duly acknowledged.]"

That said alleged sale of said property to said purported bidder and said purported deed to said Keith were wrongful, illegal, fraudulent, and void, and no title under said sale and deed was passed by virtue of said deed, as was afterwards more fully in said amended petition set forth.

(4) That after the first publication of the notice of sale above set out Hon. W. A. Treadwell, justice of the

peace in and for McAlester township, Pittsburg county, Okla., upon the petition of the defendant McCann, appointed R. L. Gates, J. A. Smith, and Wyley J. Jones as three disinterested householders of said McAlester township to appraise said property, who on the 4th day of September, 1909, qualified as such appraisers, and on said date made a return of their appraisement on said property, appra sing the same in the sum of $2,500, copies of which qualification and appraisement were made a part of plaintiff's amended petition. That said purported sale of said property was not held under said appraisement, but that said defendant McCann disregarded said appointment of said appraisers and their said return and said appraisement, and on the ———— day of September, 1909, obtained from said justice of the peace the appointment of other appraisers to view and appraise said property, and that on the ———— day of September, 1909, said justice of the peace, acting upon said petition of said defendant McCann, did appoint W. E. Busby, George L. Metcalf, and S. H. Tanner as appraisers to view and appra se said property. That on the ———— day of September, 1909, said appraisers, as such, appraised said property and filed their return appraising said property in the sum of $1,200. A copy of the appointment, qualification, and appraisement of said appraisers was made a part of plaintiff's amended petition, and appears set forth in full in the deed from the said Madeline Guillaume to Irenus P. Ke th hereinabove set out. That the said appraisement of said property was less than one-half of the appraisement by the first appraisers, being $1,300 less than the appraisement of the first appraisers, and that said defendant McCann wrongfully, illegally, and fraudulently secured said second appraisement of

said property, and so sold said property under said second appraisement without any effort to sell said property under the first appraisement, for the small disproportionate and inadequate sum of $1,200—by reason of all of which said sale was irregular, illegal, and void.

(5) That said land, as shown by said notice of said purported sale, was advertised to be sold between the hours of 9 o'clock a. m. and 4 o'clock p. m. on the 21st day of September, 1909. That in truth and in fact said sale was illegally, wrongfully, and fraudulently held by said defendant at 9 o'clock a. m. sharp, without making any effort to secure bidders, and at a time when prospective bidders were not upon the street, and without any opportunity for prospective bidders to bid on said property, and was cried off hurriedly before prospective bidders could arrive, and the plaintiff himself, as well as other prospective bidders, deprived of an opportunity of bidding on said property, and that said mortgage trustee made no effort whatever to cause said property to bring its fair, reasonable market value. That in truth and in fact there were no *bona fide* bidders at said purported sale, there being only two bids offered, one by J. Joseph Elder and one by Irenus P. Keith. That said J. Joseph Elder was an employee in the office of attorney for said defendant Madeline McCann, and that said Irenus P. Keith was a nominal, fictitious and dummy bidder, and that said Keith was solicited by defendant to be present and bid on said property at said hour and place for the avowed purpose on the part of said attorneys of bidding in said property before their bidders might arrive, and said property was cried off to the said Irenus P. Keith, for the inadequate and disproportionate sum of $1,210, when in truth and in fact the said Keith did not intend

to purchase said property, did not intend to pay for said property, did not bid for the purpose of so doing, paid no consideration therefor, and in fact was bidding for the said defenant without any intention whatever of being bound by said bid, and only bid at the solicitation of and as an accommodation to said defendant and her said attorneys. That said Irenus P. Keith never did pay any part of his said bid, and afterwards executed to said Madeline Guillaume a quitclaim deed conveying said property for the purported consideration of $1, which $1 was not paid.

A copy of the above deed from said Keith to said defendant McCann was made a part of plaintiff's amended petition, and is in words and figures following, to wit:

"This indenture made this 30th day of December, A. D. 1909, between Irenus P. Keith, of McAlester, Pittsburg county, Oklahoma, party of the first part, and Madeline Guillaume, of Krebs, Pittsburg county, Oklahoma, party of the second part, witnesseth:

"That said party of the first part, in consideration of the sum of one dollar to Madeline Guillaume duly paid, the receipt whereof is hereby acknowledged, has this day remised, released, and quitclaimed, and by these presents does for himself, his heirs, executors, and administrators, remise, release, and forever quitclaim unto the said party of the second part, and her heirs and assigns forever, all his right, title, interest and estate, and all his claim and demand both at law and in equity, of, in, and to all of lot eight (8) in block three hundred twenty-four (324) in the city of McAlester, Pittsburg county, State of Oklahoma, according to the official plat and survey thereof approved by the Department of the Interior February, 1901, under the name of South McAlester, Central district, Indian Territory, together with all and singular hereditaments and appurtenances thereunto belonging.

"To have and to hold the above-described premises unto the said Madeline Guillaume, her heirs, assigns, so that neither he, the said Irenus Keith, or any person in his name and behalf, shall or will hereafter claim or demand any right or title to the said premises or any part thereof, but they and every one of them shall by these presents be excluded and forever barred.

"In witness whereof the said party of the first part has hereunto set his hand and seal the day and year first above written.

"IRENUS P. KEITH.

"[Duly acknowledged.]

"Filed for record January 3, 1910, at 4 o'clock p. m., Deed Record Book 6, page 249."

That said Irenus P. Keith in making said bid acted for the benefit and as the agent of said defendant Madeline Guillaume, whereby indirectly she became the purchaser at her own sale, by reason of all of which said sale was irregular, illegal, fraudulent, and void.

(6) That said second appraisement, said purported sale at said hour, said fictitious bidding, said purported sale at the inadequate sum of $1,210, and said bidding by said defendant at her own sale, were illegal, irregular, and fraudulent on the rights of this plaintiff, and were done, had, and performed for the purpose of obtaining plaintiff's land at said inadequate and unreasonable price and for the satisfaction of said indebtedness, whereas, in truth and in fact, said property was reasonably worth the sum of $2,500, and at a fair sale would have brought said amount, by reason of all of which said purported sale is irregular, illegal and fraudulent and void.

(7) That said mortgage provided, in substance, that in case of default said premises covered might be sold at public auction to the highest and best bidder for cash

in hand. That said alleged notice of said purported sale provided that the purported sale of said land would be to the highest and best bidder for cash in hand, and that said sale was not made for cash in hand, as provided in said mortgage and in said notice of sale. That no sum whatever was paid by said bidder, Irenus P. Keith, nor any part thereof, nor was same intended to be paid, and that he, the said Keith, executed to said defendant Madeline McCann a quitclaim deed in the sum of $1, which $1 was not paid, by reason of all of which said purported sale is illegal and void.

(8) That on, to wit, the 7th day of March, 1910, the said defendant Madeline McCann made, executed, and delivered to Andrew O'Reilly a general warranty deed conveying said property, which is of record at page 372 in Book 8 of the Deed Records in the office of the register of deeds of Pittsburg county, Okla., and said Andrew O'Reilly now claims said property under and by virtue of said last-mentioned deed. A copy of said deed was made a part of plaintiff's amended petition, and is in the words and figures following, to wit:

"GENERAL WARRANTY DEED RECORD.

"FROM MADELINE MCCANN TO ANDREW O'REILLY.

"Know all men by these presents: That Madeline McCann, *nee* Guillaume, of Krebs, Pittsburg county, Oklahoma, party of the first part, in consideration of the sum of sixteen hundred fifty ($1,650.00) dollars in hand paid, the receipt of which is hereby acknowledged doth hereby grant, bargain, sell, and convey unto Andrew O'Reilly, of McAlester, Pittsburg county, Oklahoma, party of the second part, the following described real estate and premises situate in Pittsburg county, State of Oklahoma, to wit: Lot eight (8) in block three hundred twenty-four (324) in the first ward of

the city of McAlester, Oklahoma, as shown by the plat of the city of South McAlester, Ind. Ter., as approved by the Secretary of the Department of the Interior, February 1901—together with all improvements thereon and the appurtenance thereunto belonging, and warranty the title to the same.

"To have and to hold said described premises unto the said party of the second part, his heirs and assigns forever, free, clear, and discharged of and from all former grants, charges, taxes, judgments, mortgages, and other liens and incumbrances of whatsoever nature.

"Signed and delivered this, the 7th day of March, 1910.

"MADELINE MCCANN, nee MADELINE GUILLAUME.

"[Duly acknowledged.]

"STATE OF OKLAHOMA, COUNTY OF PITTSBURG—SS.

"This instrument was filed for record on the 8th day of March, 1910, at 3:35 o'clock p. m., and duly recorded in Book 8 of Deed Records, at page 372.

"A. G. COCHRAN, Register of Deeds."

(9) That on the day of the sale of said premises, to wit, the 31st day of August, 1909, plaintiff tendered to said defendants the principal amount due on said mortgage, together with the interest accrued to that date and the costs of said sale, in payment of said indebtedness, but that said tender of said amount was refused. That plaintiff is ready and willing to pay said principal debt secured by said mortgage, together with interest thereon, in the total sum of $——— and the costs of said sale, which said sum of $——— plaintiff now tenders and offers to pay.

(10) That said deed from Madeline McCann, nee Madeline Guillaume, to Irenus P. Keith, recorded at page 101 in Book 6 of Deed Records in the office of the register

of deeds of Pittsburg county, Okla., and said quitclaim deed from Irenus P. Keith to Madeline Guillaume, of record at page 249 in Book 6 of Deed Records in said office, and said purported deed of said Madeline Guillaume McCann, to Andrew O'Rreilly, of record at page 372 in Book 8, Deed Records, in said office, and each of them, are void by reason of the facts herein stated, and constitute a cloud on plaintiff's title. That by reason of the matters and things set out plaintiff has been deprived of the use, occupation, and possession of said property and the rents, revenues, and profits therefrom, to his great damage in the sum of $500.

Thereupon the plaintiff prayed the judgment of the court canceling, vacating, annulling, and setting aside the purported sale of said property under said mortgage, and for judgment canceling the following deeds of conveyance: The deed from Madeline Guillaume to Irenus P. Keith, of record at page 101 in Book 6 of Deed Records in the office of the register of deeds of Pittsburg county, Okla.; deed of conveyance from Irenus P. Keith to Madeline Guillaume, of record at page 249 in Book 6 of Deed Records in said office of the register of deeds; deed of Madeline McCann to Andrew O'Reilly, of record at page 372 in Book 8 of Deed Records in the office of said register of deeds.

The plaintiff further prayed that the above deeds and each of them be declared null and void and of no effect, and that the plaintiff be adjudged to be the absolute owner in fee simple of the property described in said deed, for judgment in the sum of $500 for damages shown by the allegations of his said amended petition, for his costs, and all other relief to which he might be entitled.

To the amended petition of plaintiff the defendant O'Reilly filed a general demurrer, which was in the words and figures following, to wit:

"Comes now said Andrew O'Reilly and demurs to the amended petition of the plaintiff herein filed, for the reason that the same does not state facts sufficient to constitute a cause of action against him."

Defendant Madeline McCann also filed a general demurrer to plaintiff's amended petition, in words and figures as follows:

"Comes now the defendant Madeline McCann and demurs to the petition of the plaintiff herein, and for grounds of objection states: (1) That the petition does not state facts sufficient to constitute a cause of action in favor of this plaintiff and against this defendant."

Upon consideration of the above-mentioned demurrers the court sustained same, to which ruling of the court the plaintiff excepted. Plaintiff was given ten days within which to announce whether he would plead further. Plaintiff refused to plead further, and judgment was entered in favor of the defendants, that the plaintiff take nothing by this suit, and that defendants recover their costs. Within the time limited by law the plaintiff brought said case to this court on appeal by petition in error with transcript of the record attached.

This brings us to the question as to whether the petition states facts sufficient to entitle the plaintiff to the relief sought. Bearing in mind the uniform and well-known rule that, "where a pleading is demurred to, all the facts well pleaded are admitted for the purposes of the demurrer," we will proceed to the consideration of the facts pleaded, and thereby admitted, in the petition. It will first be noticed that the land is situated in that part

of Oklahoma formerly known as the Indian Territory, in which the laws of Arkansas were in force at the time of making and entering into the mortgage contract involved, which was August 2, 1907, and that the proceedings to foreclose were commenced on the 31st day of August, 1909—nearly two years after the adoption of the Constitution and admission of the state. The foreclosure proceedings were taken under the summary remedy provided by the laws of Arkansas, which was written into and became a part of, the contract, as follows:

"It shall be lawful for the said grantee, his agent or attorney or his assigns, or their agents or attorneys, at any time after such default or acts, to sell the said premises or any part thereof at the outer entrance of the United States court house in McAlester, in the Central district, Indian Territory, at public auction, to the highest bidder, for cash in hand, after having given twenty days' notice of the time, place, and terms of sale by publication in some newspaper published in the said district."

Naturally we are first presented with the proposition as to whether this remedy was retained and carried over by the Constitution of the State of Oklahoma. As this question was not raised or discussed in any manner by counsel for either party, we take it that it is conceded by all that the remedy, at least so far as it relates to this particular case, was carried over into statehood. The rights of the parties in this case do not depend entirely on the question of remedy, but involve a question of solemn contract made between the parties, and said contract was entered into at a time when the Arkansas law was in full force and effect, and so far as it involves the substantial contractual rights of the parties it comes within the inhibition of the Constitution of the United States prohibiting the passage of any law impairing the obliga-

tion of contracts. Here is a provision in a contract providing a more summary, speedy, simple and a much less expensive remedy than the usual equity proceedings foreclosing real estate mortgages.

The true test, as laid down by the text-writers, as well as most of the superior courts, is found in *Edwards v. Kearzey,* 96 U. S. 595, 24 L. Ed. 793, as follows:

"The remedy subsisting in a state when and where a contract is made and is to be performed is a part of its obligation; and any subsequent law of a state which so affects that remedy as substantially to impair and lessen the value of the contract is forbidden by the Constitution of the United States, and therefore void."

In the body of this opinion, referring to this particular matter, the court says:

"It is no answer that the acts of Kentucky now in question are regulations of the remedy, and not of the right to the lands. If these acts so changed the nature and extent of existing remedies as materially to impair the rights and interests of the owner, they are just as much a violation of the contract as if they overturned his rights and interests."

Again, the court uses this language:

" 'One of the tests that a contract has been impaired is that its value has by legislation been diminished. It is not by the Constitution to be impaired at all. This is not a question of degree or manner or cause, but of encroaching in any respect on its obligation—dispensing with any part of its force'—citing *Bank v. Sharp,* 6 How. 301." [12 L. Ed. 447.]

A very similar question was presented in *Purcell v. Barnett,* 30 Okla. 605-612, 121 Pac. 231, 234, in which this court said:

"Counsel for defendants also urge the invalidity of the sale under the power contained in the deed of trust,

and contend that the same was void, for that under the Oklahoma law in force at the time the trust deed could not be foreclosed without a decree of court ordering said land sold, and insists that the matter of foreclosing a real estate mortgage is one of procedure only, governing the manner in which the same shall be foreclosed, and directing the payment of the proceeds. This position, as we have heretofore said, is untenable, for that the rights of the parties under the contract complained of were fixed by the terms thereof, which, as we have seen, were agreed upon prior to statehood and while the laws of Arkansas were in force. It is a rule so well established that citation of authority is unnecessary that the law of the land enters into and forms a part of every valid contract, and the enforcement of this contract requires a full consideration of the rights of the parties hereto, and these rights, having been fixed and determined by the laws of Arkansas, must also be enforced thereunder. If the question were only one of procedure, we could agree with the contention of counsel, but it involves more than mere procedure; it involves the rights of the parties as fixed by solemn contract, which rights are guaranteed to the parties by virtue of the Schedule of the Constitution of the state."

In the light of these authorities, we are of opinion that section 1 of the Schedule of the Constitution of this State, which provides that, "No existing rights, actions, suits, proceedings, contracts, or claims shall be affected by the change in the forms of government existing in the Territory of Oklahoma, and the Indian Territory, but all shall continue as if no change in the forms of government had taken place," applies in this case, and that the summary proceedings adopted herein for the foreclosure of mortgages were legal and proper.

It being settled that the procedure sought to be adopted was proper and legal, we come to the consider-

ation of the manner in which it was pursued. The
petition alleges:

"That after the publication of notice of sale, and
after the justice of the peace had appointed one set of
appraisers, as provided by law in force, and after they
had appraised said premises at $2,500, the sale under
said appraisement was abandoned, and the appraisement
disregarded, and another and different set of appraisers
appointed, and the premises again appraised by them
(the last appraisers) at $1,200 or $1,300 less than the
first appraisement; that said defendant McCann wrong-
fully, illegally, and fraudulently procured the second ap-
praisement of said property, and sold said property under
said appraisement without any effort to sell said prop-
erty under the first apraisement, for the small, dispropor-
tionate, and inadequate sum of $1,200;"; and "that said
land, as shown by said notice of said purported sale, was
advertised to be sold between the hours of 9 o'clock a.
m. and 4 o'clock p. m. on the 21st day of September,
1909; that in truth and in fact said sale was illegally,
wrongfully, and fraudulently held by said defendant at
9 o'clock a. m. sharp, without making any effort to secure
bidders, and at a time when prospective bidders were not
upon the street, and without any opportunity for prospec-
tive bidders to bid on said property, and was cried off
hurriedly before prospective bidders could arrive and the
plaintiff himself as well as other prospective bidders, de-
prived of an opportunity of bidding on said property, and
that said mortgage trustee made no effort whatever to
cause said property to bring its fair, reasonable market
value; that in truth and in fact there were no *bona fide*
bidders at said purported sale, there being only two bids
offered, one by J. Joseph Elder, and one by Irenus P. Keith;
that said J. Joseph Elder was an employee in the office of
attorney for said defendant Madeline McCann, and that
said Irene P. Keith was a nominal, fictitious and dummy
bidder, and that said Keith was solicited by defendant to
be present and bid on said property at said hour and

place for the avowed purpose on the part of said attorneys of bidding in said property before other bidders might arrive, and said property was cried off to the said Irenus P. Keith for the inadequate and disproportionate sum of $1,210, when in truth and in fact the said Keith did not intend to purchase said property, did not intend to pay for said property, did not bid for the purpose of so doing, paid no consideration therefor, and in fact was bidding for said defendant without any intention whatever of being bound by said bid, and only bid at the solicitation of and as an accommodation to said defendant and her said attorneys; that said Irenus P. Keith never did pay any part of his said bid, and afterwards executed to said Madeline Guillaume a quitclaim deed conveying said property for the purported consideration of $1, which $1 was not paid."

These allegations are admitted by the demurrer to be true. It appears that the first appraisement, which was abandoned, was made on the 4th day of September, 1909, and on the same day the defendant herein, mortgagee, caused the second set of appraisers to be appointed, and proceeded forthwith to sell said property under said last appraisement. The statutes of Arkansas in force at that time and under which they were pretending to proceed are as follows:

Mansfield's Digest, sections 4759, 4760, 4761:

"At all sales   *   *   *   of real property under mortgages and deeds of trust in this state, such property shall not sell for less than two-thirds of the appraised value thereof:   Provided, that if the property shall not sell at the first offering for two-thirds of the amount of the appraisement, then   *   *   *   another offering may be made in twelve months thereafter, at which offering the sale shall be to the highest bidder without reference to the appraisement.   *   *   * "

"When such sales are to be made, the mortgagee, trustee or other person authorized to make the same shall,

before the day fixed therefor, apply to the nearest justice of the peace of the township in which such sale is to be made, * * * for the appointment of appraisers; and such justice shall thereupon appoint three disinterested householders of the county, who shall take and subscribe an oath before such justice that they will well and truly view and appraise the property that may be shown them."

"Such appraisers shall proceed to view and appraise such property, and they, or any two of them, shall make a report of their appraisement in writing, which report shall be attached to the oaths taken as aforesaid, and shall be delivered to the person making the sale, and held by him subject to inspection by all parties interested."

We have been unable to find any provision in the statutes of Arkansas for a second appraisement, and it would therefore seem that only one appraisement is contemplated. The record does not show why the first appraisement was abandoned, unless we take it from the allegations of the petition that it was one for the express purpose of procuring the land to be sold for less than it was worth, or less than two-thirds of the reasonably fair appraisement. Such can reasonably be gathered from the allegations of the petition. If we adopt the first appraisement, the land having been sold for $1,200, the sale would be void, under the decisions of that state.

In the third paragraph of the syllabus in *Ellenbogen. v. Griffey,* 55 Ark. 268, 18 S. W. 126, we find this language:

"A sale of mortgaged property for less than two-thirds of its appraised value is void."

The same rule is practically adopted in *Kelley v. Graham,* 70 Ark. 490, 69 S. W. 551. Under these sections of the statutes above quoted and the decisions of the Supreme Court of Arkansas *supra,* we are of the opinion that the sale of this property for $1,200 was

void, and for that reason the demurrer to the petition should be sustained. It seems that under the decisions of the Supreme Court of Arkansas a mortgagee in a contract providing for summary sale of property and foreclosure proceedings as followed herein is not allowed to purchase the property, either directly or indirectly, for his own benefit, at the sale.

In *Imboden v. Hunter*, 23 Ark. 622, 79 Am. Dec. 116, we find this language:

"It is a rule in equity that a   *   *·   *   mortgagee with power of sale is not allowed to purchase, directly or indirectly, for his own benefit, at the sale."

The same rule is laid down in *Littell v. Grady*, 38 Ark. 584. In our Supreme Court, in *Meadors v. Johnson*, 27 Okla. 552, 112 Pac. 1121, we seem to have adopted the same rule, so far as it relates to the laws of Arkansas, applicable in such cases, and in so doing use the following language:

"In *Littell v. Grady et al.*, 38 Ark. 584, the sale was set aside because the trustee, without express authority in the trust, purchased at a foreclosure sale. The court held that the mortgagor should be granted this relief, although he did not offer to pay the mortgage debt. In *Imboden v. Hunter*, 23 Ark. 622 [79 Am. Dec. 116], a sale was made under power of sale in a trust deed at which the trustee purchased. Upon application of the *cestui que trust* the sale was set aside and a resale ordered. Sale of the land *en masse* instead of separate parcels is such an irregularity as might be waived by the mortgagor, or of which he might be estopped to complain by his conduct showing an acquiescence; but these questions are not presented by the pleadings. Failure to give the notice of the sale required by the terms of the mortgage and the irregularity in selling the property *en masse* with fraudulent intent and with result of greatly sacrificing

the interests of the mortgagor constitute, in our opinion, valid defenses to this proceeding, under the procedure in force in the Indian Territory before the admission of the state, by which this proceeding must be governed."

It must not be overlooked that the petition charges, or at least ostensibly charges, conspiracy between the purchaser at the sale and the mortgagee, entered into for the benefit of the mortgagee, whereby she could obtain title to the mortgaged property, and in pursuance of such conspiracy, we gather from the allegations of the petition, for the purpose of evading the law which prohibits the mortgagee from purchasing at the sale, the pretended purchaser, acting for the mortgagee, bought in the property, and immediately conveyed it to the mortgagee for the consideration of $1. All these allegations are admitted by the demurrer. The question is, these allegations being admitted: Does that state facts sufficient to entitle the plaintiff to relief in this case? In Jones on Mortgages (6th Ed.) section 1877, we find this language:

"It is not necessary, in order to avoid the sale, to show there was any actual fraud or unfairness in the transaction, when a mortgagee has violated the principle that a trustee can never be a purchaser. There might be fraud or unfairness, and yet this could not be proved. To guard against this uncertainty and to place the trustee beyond the reach of temptation, the law allows the *cestui que trust* to set aside such a sale at his option without, showing that he has been in any way injured. * * * Without the agreement or consent of the mortgagor he can acquire no title by a purchase, directly or indirectly, at his own sale under the power."

It is well settled that, where a person is prohibited from doing a certain act directly, he will not be permitted to evade the statute by violating the law indirectly. If

the allegations of the petition are true, the purchaser at the sale had no interest in the purchase; he paid nothing, but simply bought the property in for the use and benefit of the mortgagee, and immediately conveyed it to her for the named consideration of $1, and in fact never received anything. The allegations of the petition as to the conduct of the purchaser and the mortgagee certainly bring them within the rule laid down in *Littell v. Grady*, 38 Ark. 584, which is as follows:

"Less than actual fraud in the sale of mortgaged property will justify a court of chancery in setting aside the sale. Equity watches with much jealousy deeds of trust and mortgages containing a power of sale *in pais;* and if the power be executed with partiality to the creditor, and with unfairness and oppression toward the mortgagor, and to his injury, it will set aside the sale."

Under the allegations of the petition as to the conduct of the purchaser and the manner in which she obtained title to the premises, and especially that she entered into a conspiracy with the purchaser to evade the law, and by so doing obtained title to the premises through the sale of this property, we cannot say that the petition does not state facts sufficient to entitle the plaintiff to the relief sought, and for that further reason we are of the opinion that the demurrers should have been overruled.

The defendant Andrew O'Reilly claims to be a *bona fide* purchaser, and as such, entitled to protection in this case. In our opinion, his contention is untenable. As we look at the authorities *supra*, coming from the State of Arkansas the title obtained through the mortgage sale was absolutely void—not voidable, but void. The conveyance from the purchaser to the mortgagee, as stated before, was by quitclaim deed. Aside from that, the

record must have shown the many irregularities set out in the plaintiff's petition herein, and by and through all these, and taking into consideration the further fact that the mortgage sale was void, it cannot be said that the grantee of the mortgagee, who holds simply by a quit-claim deed, is a *bona fide* purchaser. Pursuing the course of the decisions of the Supreme Court of Arkansas, our attention is called to the case of *Gaines v. Summers*, 50 Ark. 322, 7 S. W. 301, wherein it is said:

"A person purchasing an interest in lands 'takes with constructive notice of whatever appears in the conveyances constituting his chain of title.' If anything appears in such conveyances 'sufficient to put a prudent man on inquiry which, if prosecuted with ordinary diligence, would lead to actual notice of some right or title in conflict with that he is about to purchase, it is his duty to make inquiry, and, if he does not make it, he is guilty of bad faith or negligence,' and the law will charge him with the actual notice he would·have received if he had **made** it"—citing *Stidham v. Matthews*, 29 Ark. 650; *Ringgold v. Waggoner*, 14 Ark. 69; *Hardy v. Heard*, 15 Ark. 184; *Stroud v. Pace*, 35 Ark. 100; and other cases and texts.

Further along in the case we find the following language, which we consider as especially applicable here:

"The evidence shows that the lands in controversy cost about $6,000, and that there was loaned on them as security $2,220. The deed executed by Whittaker to Mrs. Saunders was a quitclaim deed, and was recorded. It states that the consideration received for the lands was $5. Was not this fact sufficient to put any prudent man on inquiry? Is it possible that any sane man, having good title to land worth $2,000 or $6,000, would sell it for $5? The question suggests its answer. Add to this the fact that the conveyance executed was a quitclaim deed, and the conclusion that Mrs. Saunders did not acquire a good and valid title, in the absence of an expla-

nation, would be irresistible. It was at least sufficient to have put appellants on inquiry, which, if they had prosecuted with ordinary diligence, would doubtless have led to actual notice of the facts as shown by the evidence in this case. But they prosecuted no inquiry; and it follows that they are not *bona fide* purchasers without notice."

Of course, it will be understood that we have no information as to what the actual facts are. We simply pass upon the case as presented to us by the petition and demurrers, which to our mind clearly present a case in which the plaintiff is entitled to be heard upon its merits.

For that reason, with the others herein expressed, the case should be reversed and remanded.

By the Court: It is so ordered.