17   611
17   643
17   611
18   558
18   583
19   707
17   611
d21  400
17   611
24   103
17   611
f39  220

[No. 2672.  Decided September 23, 1897.]

NATHANIEL R. SWINBURNE, *Respondent*, v. A. U. MILLS, as *Sheriff of Pierce County, Washington, Appellant.*

STATUTES — SUBJECTS EMBRACED IN TITLE AND BODY OF ACT — RETRO-
ACTIVE OPERATION — IMPAIRMENT OF CONTRACTS — MORTGAGE FORE-
CLOSURES — STAY AND APPRAISEMENT LAWS.

The title of an act declaring that it is " an act relating to the sale of property under execution and decree, and the confirmation of sheriff's sales," etc., is comprehensive enough to embrace provisions in the act relating to decrees of foreclosure of mortgages.

That it was the intent of the legislature to include the subject of mortgage foreclosures in the body of an act relative to sales of property under execution and decree sufficiently appears from a provision therein that " in case of foreclosure of mortgages or other liens nothing shall prevent the sale of the entire premises included within the mortgage or lien."

A statutory provision that " this act shall not apply to judgments entered prior to the taking effect thereof, nor to executions which shall issue thereupon, but proceedings thereunder shall be had in all respects in the manner now provided by law, and redemptioners shall have the same right to redeem property sold upon judgments or decrees rendered prior to the taking effect of this act, as if this act had not been passed," clearly indicates the legislative intent to make the act retroactive and to subject judgments entered subsequent to the taking effect of the act to the operations of the new law without regard to the date of the contract.

Where the law in force at the time of the execution of a mortgage provides for the immediate sale of the mortgaged premises upon decree of foreclosure, subject only to the right of redemption, and contains no provision requiring that the sale shall be for a sum within a certain percentage of the appraised value of the premises, a subsequent law providing for a year's stay of sale under the foreclosure decree and requiring the sale to bring within eighty per cent. of the appraised value of the premises, is un-constitutional and void as to existing contracts for the reason that it is an impairment of their obligations.

Inasmuch as the laws existing at the time of a contract enter into and form a part of it, the person entitled to enforce the obligation of a contract, is entitled to protection against a change in existing remedies, when their nature and extent are so changed as to materially affect his rights and interests under his contract.

Appeal from Superior Court, Pierce County.—Hon. J. A. WILLIAMSON, Judge.   Affirmed.

C. M. Riddell, for appellant

O. G. Ellis, for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This is an appeal from a judgment of the superior court of Pierce county, granting a peremptory writ of mandamus against A. U. Mills, as sheriff of Pierce county, Washington, commanding the said sheriff to proceed with the sheriff's sale under the special execution and order of sale issued out of the clerk's office of said court, on the 24th day of June, 1897, in the action of Nathaniel R. Swinburne v. George E. DeLano et al., and at once to advertise certain mortgaged property described in the decree in said cause for sale to satisfy the judgment in said cause, without appraisement and without requiring the judgment creditor or the judgment debtor, or either of them, to fix any value upon said mortgaged property, or any part thereof, as a minimum price to be paid at such sale, and to proceed at once to execute said order of sale under and pursuant to the old law regulating sales on special execution and order of sale on mortgage foreclosures, without regard to, or any compliance with, the provisions of the recent act of the legislature regulating sales under execution, being Chapter L, Laws of Washington, 1897, pages 70 to 76, inclusive.   Without further stating the

case it will be sufficient to say that it involves the legality or application of the law just mentioned and entitled,

"An act relating to the sale of property under execution and decree, and the confirmation of sheriffs' sales, and repealing sections 511, 512, 513, 514, 515, 516, 517, 518, 519, 520 and 521 of vol. 2 of Hill's Annotated Statutes and Codes of the state of Washington, relating to the redemption of real estate sold on decree of foreclosure and on execution."

The respondent insists that the act under consideration was not intended to cover the foreclosure of mortgages, or to interfere in any way with the law in relation to the foreclosure of mortgages, only in so far as it repealed the old law of redemption, whether such mortgages were executed before or after the said act went into effect, but was intended simply to apply, and does apply exclusively, to sales under executions. He contends (1) that neither the title to, nor the body of, the act will sustain the contention that the law applies to the foreclosure of mortgages; (2) that it was not the intention of the legislature to make the act retroactive in its effect; and (3) that if the law does apply to the foreclosure of mortgages, and if it was the intention of the legislature to make the act retroactive, that portion of the act in relation to a year's stay of sale and the provisions for fixing a valuation by the judgment creditor or judgment debtor or by appraisement preliminary to any sale, are unconstitutional and void, for the reason that they are obnoxious to section 10 of article 1 of the constitution of the United States which provides that " no state shall  .  .  .  pass any  .  .  .  law impairing the obligation of contracts;" and section 23, article 1 of the constitution of this state, which provides that " no .  .  .  law impairing the obligations of contracts shall ever be passed."

We have considered with some care the first proposition presented by the respondent, viz.: that the title to the act in question is not sufficient to include the foreclosure of mortgages, nor is there sufficient in the body of the act to include that subject; but we are inclined to think that, considering the comprehensiveness of the word "decree," a holding that the word as used in the title did not apply to a decree of foreclosure would be too literal; and, while the body of the act is to some extent indefinite and uncertain, we think the inference which must necessarily be drawn from the provision in section 10, that "in case of foreclosure of mortgages or other liens nothing shall prevent the sale of the entire premises included within the mortgage or lien," is that it was the intention of the act to include mortgages as well as property sold under execution.

We also think that it was the intention of the legislature to make the provisions of this act retroactive. Section 18 provides that "this act shall not apply to judgments entered prior to the taking effect thereof, nor to executions which shall issue thereupon, but proceedings thereunder shall be had in all respects, in the manner now provided by law, and redemptioners shall have the same right to redeem property sold upon judgments or decrees rendered prior to the taking effect of this act, as if this act had not been passed." It seems by this expression of the legislature plainly to have been their intention to subject judgments entered subsequent to the taking effect of the act to the operations of the new law without regard to the date of the contract. There can be no other reasonable inference deduced from the language used in section 18.

This brings us then to the third proposition, viz.: Is the act unconstitutional so far as its application to contracts made prior to the passage of the act is concerned? It

will thus be seen that this case involves the principle of inviolability of contracts. This principle the courts have always protected, no matter from what quarter, or under what guise, it has been assailed, whether by a party to the contract who has sought to vary its terms, or by legislative enactments in his interests. It is a principle which is founded upon honesty and good faith, and finds its support in ethics as well as law, and it was recognized and enforced before it became a constitutional guarantee. It gives stability to business transactions. In fact, it makes them possible. It gives value to contracts, and without the upholding of this principle neither civilization nor governments could exist. A contract is an agreement to do or not to do a particular thing. The obligation is the binding force of the contract. The constitution prohibits the passing of laws which impair the obligation of a contract. The practical question then is, What is an impairment of a contract? Webster's definition of "impair" is, "To make worse; to diminish in quantity, value, excellence or strength; to deteriorate." Then if the value of a contract is deteriorated or lessened by the passage of an act, the obligation of the contract is most certainly impaired. Then the question arises, Was the contract of this mortgagee deteriorated or made less valuable by the passage of this act? It is a principle of law so often enunciated and so uniformly maintained that the law which is in existence at the time a contract is made becomes a part of the contract, that it would be idle to cite authorities on that proposition, or to further mention it. In this case it is especially stipulated in the mortgage that the laws in force at the time the contract was made should become a part of the contract, but in the absence of such stipulation the effect would be exactly the same. Under the law in existence at the time the contract was made, the mort-

gagee had a right to the sale of this land at once upon the issuance of his execution, subject only to the redemption provided for by law. This was a valuable right and a right no doubt that was taken into consideration by the judgment creditor, or, in this case, the mortgagee, when the contract was made. The law now compels him to wait more than a year after judgment before he can have the sale made. It seems to us to be beyond controversy that, as to antecedent contracts, this provision of the law is void.

Again, under the law in existence at the time the contract was made, the mortgagee had a right to have the property mortgaged sold, and to have the proceeds of the sale, whatever they might be, subjected to the payment of his judgment. Now a condition is imposed upon him that might defeat the recovery of his debt altogether. The land must be appraised, and if it does not bring within eighty per cent. of the appraised value, the sale will be set aside, and may be set aside indefinitely. Under the present law the more security in value that the mortgagee takes, the worse position he is placed in. For instance, if to secure a debt of $1,000 he takes security on land which will be reasonably valued at $10,000, the law subjects him to the necessity of finding a bidder who will pay $8,000 for the land mortgaged. If he cannot find any one else, in order to procure the benefits of the sale, he must bid the land in himself for that amount. He then has to be responsible for an outlay, for a purchase of the lands, which was never contemplated in his original contract. These provisions plainly lessen the value of his contract, because burdens are imposed upon him which did not exist when it was made.

But it is argued by appellant that no one has a vested interest in mere remedies. That is true when the remedy is merely a legislative direction as to methods of enforce-

ment which do not materially change the rights of the parties to the contract, because then it would not impair the contract. But, as is said by the supreme court of the United States in *Bronson v. Kinzie*, 1 How. 311, "if that effect is produced, it is immaterial whether it is done by acting on the remedy or directly on the contract itself. In either case it is prohibited by the constitution." This law goes beyond a regulation of the character that is spoken of in cases which hold that there is no vested right in remedies. The principles involved in this case have been so often passed upon by the courts of other states, and especially by the supreme court of the United States, in an unbroken line of decisions reaching from an early day up to the present time, that it is scarcely an open question here, because, being a constitutional provision of the United States, the United States courts have jurisdiction over such cases as this, and their decisions are binding upon state courts.

In *State of Louisiana v. City of New Orleans*, 102 U. S. 203 (Book 26, L. C. P. Co. 132), in an opinion rendered by Justice FIELD, the court said:

"The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced; by which the parties can be obliged to perform it. Whatever legislation lessens the efficacy of these means impairs the obligation. If it tend to postpone or retard the enforcement of the contract, the obligation of the latter is to that extent weakened. The Latin proverb: *Qui cito dat bis dat*—he who gives quickly gives twice—has its counterpart in a maxim equally sound—*Qui serius solvit, minus solvit*—he who pays too late, pays less. Any authorization of the postponement of payment, or of means by which such postponement may be effected, is in conflict with the constitutional inhibition."

In *Louisiana v. Police Jury*, 111 U. S. 716 (Book 28,

L. C. P. Co. 574, 4 Sup. Ct. 648), the court held that by the obligation of a contract is meant the means which at the time of its creation the law affords for its enforcement.

In *Edwards v. Kearzey*, 96 U. S. 595 (Book 24, L. C. P. Co. 793), it was held that the provision in the constitution of a state which exempts from sale under execution every homestead not exceeding in value $1,000, is invalid as regards contracts made before the adoption of the constitution. In the discussion of the principles involved, the court in that case said:

"It is also the settled doctrine of this court, that the laws which subsist at the time and place of making a contract enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. This rule embraces alike those which affect its validity, construction, discharge and enforcement. . . . In *Green v. Biddle*, 8 Wheat. 1, this court said, touching the point here under consideration: 'It is no answer, that the acts of Kentucky now in question are regulations of the remedy, and not of the right to the lands. If these acts so change the nature and extent of existing remedies as materially to impair the rights and interests of the owner, they are just as much a violation of the compact as if they overturned his rights and interests.' 'One of the tests that a contract has been impaired is, that its value has by legislation been diminished. It is not by the constitution to be impaired at all. This is not a question of degree or manner or cause, but of encroaching in any respect on its obligation—dispensing with any part of its force.' *Planters' Bank v. Sharp*, 6 How. 301."

In *Seibert v. Lewis*, 122 U. S. 284 (Book 30, L. C. P. Co. 1161, 7 Sup. Ct. 1190), it was held that, "the remedy subsisting in a state, when and where a contract is made and is to be performed, is a part of its obligation; and any subsequent law of the state which so affects that remedy as substantially to impair and lessen the value of the

contract is forbidden by the constitution, and is therefore void."

In *Bronson v. Kinzie, supra,* the court said:

"It is difficult, perhaps, to draw a line that would be applicable in all cases between legitimate alterations of the remedy and provisions which, in the form of remedy, impair the right. But it is manifest that the obligation of the contract, and the rights of a party under it, may, in effect, be destroyed by denying a remedy altogether; or may be seriously impaired by burdening the proceedings with new conditions and restrictions, so as to make the remedy hardly worth pursuing."

In that case it was held that " a state law, passed subsequently to the execution of a mortgage, which declares that the equitable estate of the mortgagor shall not be extinguished for twelve months after a sale under a decree in chancery, and which prevents any sale unless two-thirds of the amount at which the property has been valued by appraisers shall be bid therefor, is within the clause of the tenth section of the first article of the constitution of the United States, which prohibits a state from passing a law impairing the obligation of contracts." So that it will be seen that the material question raised here was passed upon in that case. That case is particularly applicable to the condition imposed by the law under consideration in relation to the appraisement of the land to be sold and the requirement that it shall bring at least eighty per cent. of the appraised value, for buyers of land at execution sale are inclined to place their own estimate upon the value of the land sold and will probably be very slightly influenced by an appraisement made thereon.

In *Sturges v. Crowninshield,* 4 Wheat. 122, it was decided by the supreme court of the United States, Chief Justice MARSHALL rendering the opinion, after a most elab-

orate argument by eminent counsel, that the act of the legislature of the state of New York which liberated the person of the debtor and discharged him from all liability for any debt contracted previous to his discharge on his surrendering his property in the manner the act prescribed, was unconstitutional and void, so far as debts incurred prior to the passage of the act were concerned, for the reason that it impaired the obligation of a contract.

It is the impairment of the *obligation* which is interdicted by the constitution. The obligation is presumed to be valuable and its value depends upon the power of either contracting party to compel the other to fulfill the conditions of the contract by a compliance with the requirements of the law in relation to such contract which was in effect when the contract was made and the obligation assumed. Or, in the more concise language of Chief Justice MARSHALL, " the obligation of a contract is the law which binds the parties to perform their agreement." It follows, then, that any material change of the law is an impairment of the obligation.

The supreme court of the United States, in *Walker v. Whitehead*, 16 Wall. 314, in discussing this question, said:

" The laws which exist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it. This embraces alike those which affect its validity, construction, discharge and enforcement. Nothing is more material to the obligation of a contract than the means of its enforcement. The ideas of validity and remedy are inseparable, and both are parts of the obligation which is guaranteed by the constitution against impairment. . . . The states may change the remedy, provided no substantial right secured by the contract is impaired. Whenever such a result is produced by the act in question, to that extent it is void. The states are no more permitted to impair the efficacy of a contract

in this way than to attack its vitality in any other manner. Against all assaults coming from that quarter, whatever guise they may assume, the contract is shielded by the constitution. It must be left with the same force and effect, including the substantial means of enforcement, which existed when it was made. The guarantee of the constitution gives it protection to that extent."

In *McCracken v. Hayward*, 2 How. 608, a case kindred to this, it was held that the law of the state of Illinois, providing that a sale shall not be made of property levied on under an execution unless it shall bring two-thirds of its valuation, according to the opinion of three householders, was unconstitutional and void.

*Howard v. Bugbee*, 24 How. 461, which is also a case in point on the third proposition involved here, held that a statute of the state of Alabama authorizing a redemption of the mortgaged property in two years after sale under a decree by *bona fide* creditors of the mortgagor, was unconstitutional and void as to sales made under mortgages executed prior to the date of its enactment, as impairing the obligation of the contract.

And finally, the supreme court of the United States, in the late case of *Barnitz v. Beverly*, 163 U. S. 118 (16 Sup. Ct. 1042), decided May 18, 1896, after a review of the earlier cases, has settled the question of the right of possession which is involved in this case by deciding that a law of Kansas, which provided, in place of the previous mortgage foreclosure law under which the purchaser took an absolute title and possession upon the confirmation of the sheriff's sale and issue of the sheriff's deed, that the mortgagor should have eighteen months for redemption with full right of possession during that time and forbidding another sale of the same land for any deficiency on the first sale, was unconstitutional as applied to a mortgage executed before its passage.

Without further particularizing, the doctrine is announced in *Gantly's Lessee v. Ewing*, 3 How. 707; *Ogden v. Saunders*, 12 Wheat. 213; Cooley, Constitutional Limitations (5th ed.), p. 346; 2 Jones, Mortgages (3d ed.), § 1321; 3 Am. & Eng. Enc. Law, p. 751, and cases cited.

Many state courts have also decided the questions involved in this case, and such decisions have always maintained the inviolability of contracts.

The law, then, so far as the provisions in relation to the postponement of the sale and appraisement of the land are concerned, being void, and § 630 of 2 Hill's Code not having been repealed, the minor provisions of the act are not material in this case, and the judgment will be affirmed.

SCOTT, C. J., and ANDERS, GORDON and REAVIS, JJ., concur.