FIRST NATIONAL BANK OF TURTLE LAKE, a Corporation, Respondent, v. BOVEY, SHUTE & JACKSON, INC., a Corporation, Appellant.

(191 N. W. 765.)

Statutory provisions.

1. Section 7762, Comp. Laws 1913, which provides: "The purchaser from the time of the sale until a redemption . . . is entitled to receive from the tenant in possession the rents of the property sold, or the value of the use and occupation thereof," was amended by chapter 132, Laws 1919, to read as follows: "The debtor under an execution or foreclosure sale of his property shall be entitled to the rents, use and benefit of the property sold from the date of such sale until the expiration of the period of redemption."

Mortgages — law providing debtor under execution of foreclosure sale entitled to rents and benefit of property from sale until expiration of redemption applicable only to mortgages delivered after it became operative.

2. For reasons stated in the opinion, it is *held* that said chapter 132, Laws 1919, is applicable only to mortgages executed and delivered after it became operative, and is inapplicable to mortgages executed and delivered prior to that time.

Opinion filed December 30, 1922.

Mortgages, 27 Cyc. p. 1450 n. 52, 53.

From a judgment in the District Court of McLean County, *Nuessle, J.*, defendant appeals.

Affirmed.

*W. H. Stutsman,* for appellant.

*C. L. Foster,* for respondent.

Note.—On right of purchaser at foreclosure sale to rents and profits during period of redemption, see 19 R. C. L. 630; 4 R. C. L. Supp. 1285.

CHRISTIANSON, J. The controversy before us involves the ownership and right of possession of certain grain which was grown during the redemption period on certain lands purchased by the plaintiff at a mortgage foreclosure sale.

The facts are not in dispute. Briefly they are as follows: In September, 1915, one Stanley Strupsky, the then owner of a certain 160 acre tract of land in McLean county, in this state, executed and delivered to the plaintiff bank a first mortgage on such land to secure the payment of $1,100. Default having been made in the payment of the debt secured, plaintiff caused the mortgage to be foreclosed by advertisement, pursuant to the power of sale contained therein. The sale was held June 28, 1921. Plaintiff bid the property in for the full amount due for principal, interest, and costs of sale, and received the usual sheriff's certificate of sale. The defendant, Bovey, Shute & Jackson became the owner of the premises, subject to plaintiff's mortgage, on January 24, 1921. Defendant, thereafter, leased the premises to one Boyke on the share plan for the year 1921. There is no dispute as to the amount of grain produced under such arrangement, or the amount plaintiff is entitled to recover, if it is entitled to recover at all. The sole question is whether the rights of the parties to this action are controlled by § 7762, Comp. Laws, 1913, or by chapter 132, Laws 1919.

Section 7762, Comp. Laws, 1913, provides: "The purchaser from the time of the sale until a redemption . . . is entitled to receive from the tenant in possession the rents of the property sold, or the value of the use and occupation thereof. . . ."

Chapter 132, Laws 1919, amended § 7762, supra, to read as follows: "The debtor under an execution or foreclosure sale of his property shall be entitled to the possession, rents, use, and benefit of the property sold from the date of such sale until the expiration of the period of redemption."

Plaintiff's cause of action herein is predicated upon § 7762, supra. Defendant contends that this statute is no longer in effect; that the rights of the parties to this action are not controlled thereby, but that such rights are controlled by chapter 132, Laws 1919. Plaintiff answers the contentions thus advanced as follows: (1) That chapter 132, Laws 1919 was intended to apply only to mortgages executed and delivered after that law became operative; and (2) That if said chapter

132 was intended to apply to mortgages which, like the one involved here, was executed and delivered before that statute became operative, it is unconstitutional on the ground that as to such mortgages it impairs the obligations of a contract.

The legislature is forbidden by both the Federal and the state Constitution to pass any "law impairing the obligation of contracts." U. S. Const. § 10, art. 1; N. D. Const. § 16. While it is true that "in placing the obligation of contracts under the protection of the Constitution, its framers looked to the essentials of the contract more than to the forms and modes of proceeding by which it was to be carried into execution," and left to the legislature to prescribe and shape the remedy to enforce it, McCracken v. Hayward, 2 How. 608, 612, 11 L. ed. 397, 399; it is equally true that the legislature may not, under the guise of a statute relating to the remedy, change the substantial rights of the parties. 12 C. J. 1067, 1068; 15 Am. & Eng. Enc. Law, pp. 1055, 1056; Blakemore v. Cooper, 15 N. D. 5, 4 L.R.A.(N.S.) 1074, 125 Am. St. Rep. 574, 106 N. W. 566; Cleveland v. United States, 93 C. C. A. 274, 166 Fed. 677. Under the constitutional inhibition against legislation impairing the obligation of contracts, it is immaterial whether the obligation of a contract is impaired by acting on the remedy or directly upon the contract. Impairment in either case is prohibited. 6 R. C. L. p. 356; E. J. Lander & Co. v. Deemy, 46 N. D. 273, 176 N. W. 924.

In his great work on the Constitution, Story said:

"It is perfectly clear that any law which enlarges, abridges, or in any manner changes the intention of the parties, resulting from the stipulations in the contract, necessarily impairs it. The manner or degree in which this change is effected can in no respect influence the conclusion; for whether the law affect the validity, the construction, the duration, the discharge, or the evidence of the contract, it impairs its obligation, though it may not do so to the same extent in all the supposed cases. Any deviation from its terms by postponing or accelerating the period of performance which it prescribes, imposing conditions not expressed in the contract, or dispensing with the performance of those which are a part of the contract, however minute or apparently immaterial in their effect upon it, impairs its obligation." Story, Const. 5th ed. § 1385.

The provision in the Federal Constitution prohibiting a state from passing any law impairing the obligation of contracts has been considered by the United States Supreme Court in many cases. In Sturges v. Crowninshield, 4 Wheat. 197, 198, 4 L. ed. 549, opinion by Mr. Chief Justice Marshall, it was said: "What is the obligation of a contract, and what will impair it? It would seem difficult to substitute words which are more intelligible, or less liable to misconstruction, than those which are to be explained. A contract is an agreement in which a party undertakes to do, or not to do, a particular thing. The law binds him to perform his undertaking, and that is, of course the obligation of his contract. . . . Any law which releases a part of this obligation must, in the literal sense of the word, impair it. . . . But it is not true that the parties have in view only the property in possession when the contract is formed, or that its obligation does not extend to future acquisitions. Industry, talents, and integrity constitute a fund which is as confidently trusted to as property itself. Future acquisitions are, therefore, liable for contracts; and to release them from this liability impairs their obligation." And in Planters' Bank v. Sharp, 6 How. 327, 12 L. ed. 458, opinion by Mr. Justice Woodbury, the court said: "One of the tests that a contract has been impaired is, that its value has by legislation been diminished. It is not, by the Constitution, to be impaired at all. This is not a question of degree or manner or cause, but of encroaching in any respect on its obligation,—dispensing with any part of its force." The language quoted from these two opinions was quoted with approval by the United States Supreme Court in the late case of Bank of Minden v. Clement, 256 U. S. 126, 65 L. ed. 857, 41 Sup. Ct. Rep. 408.

In applying these rules the Supreme Court of the United States has held that the law in force at the time a mortgage is executed, with all the conditions and limitations it imposes, is the law which determines the force and effect of a mortgage; and, consequently, that changes in the laws imposing conditions and restrictions on a mortgagee in the enforcement of his right, and which affect its substance, are invalid as impairing the obligation, and cannot prevail. Von Hoffman v. Quincy, 4 Wall. 535, 18 L. ed. 403; Bronson v. Kinzie, 1 How. 311, 11 L. ed. 143; Brine v. Hartford F. Ins. Co. 95 U. S. 627, 24 L. ed. 858; Barnitz v. Beverly, 163 U. S. 118, 41 L. ed. 93, 16 Sup. Ct. Rep. 1042;

Bradley v. Lightcap, 195 U. S. 1, 49 L. ed. 65, 24 Sup. Ct. Rep. 748. Thus it is held a statute which extends the period of redemption, or gives a right of redemption where no such right previously existed, impairs the obligation of a mortgage executed before its enactment. Barnitz v. Beverly, 163 U. S. 118, 41 L. ed. 93, 16 Sup. Ct. Rep. 1042, supra; Howard v. Hugbee, 24 How. 461, 16 L. ed. 753; Gantly v. Ewing, 3 How. 707, 11 L. ed. 794; Bronson v. Kinzie, 1 How. 311, 11 L. ed. 143, supra; Bradley v. Lightcap, supra.  The rule announced by the Federal Supreme Court has been applied by many state courts in dealing with the same or analogous questions.  Haynes v. Tredway, 133 Cal. 400, 65 Pac. 892; Malone v. Roy, 134 Cal. 344, 66 Pac. 313; Travellers Ins. Co. v. Brouse, 83 Ind. 62; Swinburne v. Mills, 17 Wash. 611, 61 Am. St. Rep. 932, 50 Pac. 489; Hollister v. Donahoe, 11 S. D. 497, 78 N. W. 959; Paris v. Nordburg, 6 Kan. App. 260, 51 Pac. 799; Muller v. McCann, 50 Okla. 710, 151 Pac. 621; Turk v. Mayberry, 32 Okla. 66, 121 Pac. 665.

In Bradley v. Lightcap, supra, opinion by Mr. Chief Justice Fuller, it was said:

"Confessedly subsequent laws, which in their operation amount to the denial of rights accruing by a prior contract, are obnoxious to constitutional objection."

"In Bronson v. Kinzie, 1 How. 311, 11 L. ed. 143, the statute objected to gave the mortgagor twelve months to redeem after the sale, and Mr. Chief Justice Taney said: 'It declares that, although tthe mortgaged premises shall be sold under the decree of the court of chancery, yet that the equitable estate of the mortgagor shall not be extinguished, but shall continue for twelve months after the sale; and it moreover gives a new and like estate, which before had no existence, to the judgment creditor, to continue for fifteen months.  If such rights may be added to the original contract by subsequent legislation, it would be difficult to say at what point they must stop.  .  .  .  Any such modification of a contract by subsequent legislation, against the consent of one of the parties, unquestionably impairs its obligations, and is prohibited by the Constitution.' "

And many state courts have held that a statute which alters the rights of the mortgagor and mortgagee as regard the right to possession of the premises, or the rents or the value of the use and occupation, during the

year of redemption, cannot be applied constitutionally to mortgages executed and delivered before its enactment. Swinburne v. Mills, 17 Wash. 611, 61 Am. St. Rep. 932, 50 Pac. 489; Canadian & A. Mortg. & T. Co. v. Blake, 24 Wash. 102, 85 Am. St. Rep. 946, 63 Pac. 1100; Travellers Ins. Co. v. Brouse, 83 Ind. 62; Blackwood v. Van Vleet, 11 Mich. 252; Mundy v. Monroe, 1 Mich. 68.

In Swinburne v. Mills, supra, the court said: "The Constitution prohibits the passing of laws which impair the obligation of a contract. The practical question then is, What is an impairment of a contract? Webster's definition of 'impair' is, 'To make worse; to diminish in quantity, value, excellence, or strength; to deteriorate.' Then, if the value of a contract is deteriorated or lessened by the passage of an act, the obligation of the contract is most certainly impaired. The question arises, Was the contract of this mortgagee deteriorated or made less valuable by the passage of this act? It is a principle of law so often enunciated and so uniformly maintained that the law which is in existence at the time a contract is made becomes a part of the contract that it would be idle to cite authorities on that proposition or to further mention it."

Let us apply these principles to the facts in this case. The law in existence at the time plaintiff received the mortgage from Strupsky expressly provided that the purchaser at a foreclosure sale "from the time of the sale until a redemption is entitled to receive from the tenant in possession the rents of the property sold, or the value of the use and occupation thereof." Sec. 7762, supra. The mortgagee, his assigns, or their legal representatives, might fairly and in good faith purchase the premises or any part thereof. Comp. Laws, 1913, § 8053. The parties in contracting contemplated the possibility of a foreclosure, and inserted a power of sale in the mortgage. Under the law in existence at the time the mortgage was executed, plaintiff knew that in event it became necessary to foreclose the mortgage and to bid in the premises, it would obtain a certificate of sale which would entitle it not only to a sheriff's deed at the end of the redemption period, but which also would entitle it to receive from the tenant in possession the rent of the property, or the value of the use and occupation thereof, from the time of the sale until a redemption was made; and if there was no redemption then during the period allowed therefor. Can it be said that the taking

away of this right did not diminish the value of plaintiff's mortgage? It seems to us, there can be only one answer to that question. The facts in this case bear quite positive testimony that the right.possessed by plaintiff under § 7762, supra, and which defendant claims was taken away from the plaintiff and vested in the defendant by chapter 132, Laws 1919 was one of value. At the time the action was tried in the district court the period of redemption had not expired. In fact, more than four months of the redemption period remained at the time judgment was entered. If defendant had desired to do so, it could of course have redeemed. Yet it did not see fit to do so. The only thing which it deemed of sufficient value to defend was the right to the rent which the tenant in possession of the premises owed and was required to pay to someone. In other words, in this case the right to recover rent seems to have been of greater value than the right to redeem.

It does not follow, however, that chapter 132, Laws 1919, is unconstitutional. If, as the trial court held, it was the intention of the legislature that chapter 132, Laws 1919, should apply only to mortgages executed and delivered after it became operative, then of course, no constitutional objection exists.

The legislature is presumed to have intended to enact a valid law. And "when reasonably possible, a statute must be so construed as to uphold its validity. Indeed a statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts on that score. In other words, in testing the constitutionality of a statute, the language must receive such construction as will conform it to any constitutional limitation or requirement, if it is susceptible of such interpretation; and the statute and the constitutional provisions must be read together and so harmonized as to give effect to both when this can be consistently done." 12 C. J. 787, 788. And "statutes which, if applied to existing contracts would impair their obligation, will, if possible, be construed as prospective so as to sustain their validity and avoid conflict with the constitution." 2 Lewis's Sutherland Stat. Constr. 2d ed. p. 1191. See also 6 R. C. L. p. 79.

The American & English Encyclopædia of Law (vol. 26, p. 640) says:

"There is a presumption in favor of the constitutionality of a statute, and in accordance therewith, when a statute is susceptible of two con-

structions, one of which supports the act and gives it effect and the other renders it unconstitutional and void, the former will be adopted, even though the latter may be the more natural interpretation of the language used."

But even as to those statutes which the legislature may constitutionally give retrospective effect, there is no presumption that such effect was intended. The presumption is to the contrary. The rule declared by our statute is that no law like chapter 132, Laws 1919, is "retroactive unless expressly so declared." Comp. Laws, 1913, § 7320. See also E. J. Lander & Co. v. Deemy, 46 N. D. 273, 176 N. W. 926. The statute is merely a declaration of a well-recognized rule of construction. For it is well settled that

"Statutes will be construed to operate prospectively only, unless an intent to the contrary clearly appears. It is said: 'That a law will not be given a retrospective operation unless that intention has been manifested by the most clear and unequivocal expression.' And in another case: 'The rule is that statutes are prospective, and will not be construed to have retroactive operation unless the language employed in the enactment is so clear it will admit of no other construction.' The rule is supported by numerous cases. The rule is especially applicable where the statute, if given a retrospective operation, would be invalid, as impairing the obligation of contracts or interfering with vested rights. The principle that all statutes are to be so construed, if possible, as to be valid, requires that a statute shall never be given a retrospective operation when to do so would render it unconstitutional, and the words of the statute admit of any other construction. It is always presumed that statutes were intended to operate prospectively and all doubts are resolved in favor of such a construction." Lewis's Sutherland, Stat. Constr. 2d ed. § 642.

See also 6 R. C. L. 78.

The supreme court of Minnesota says:

"It is well-settled rule that laws are not to be construed retrospectively, or to have a retrospective effect, unless it shall clearly appear that it was so intended by the enacting body, and unless such construction is absolutely necessary to give meaning to the language used." Brown v. Hughes, 89 Minn. 150, 153, 94 N. W. 439.

See also Adams & F. Co. v. Kenoyer, 17 N. D. 302, 308, 16 L.R.A.

(N.S.) 681, 116 N. W. 98; Blakemore v. Cooper, 15 N. D. 5, 19, 4 L.R.A.(N.S.) 1074, 125 Am. St. Rep. 574, 106 N. W. 566; 8 Cyc. 731; 12 C. J. 721; 6 R. C. L. p. 78; E. J. Lander & Co. v. Deemy, 46 N. D. 273, 176 N. W. 927.

Chapter 132, Laws 1919, contains no express declaration that it shall apply to existing mortgages. If it is applied to a mortgage executed and delivered prior to its passage it will give to such mortgage a different legal effect as regards the respective rights of the mortgagor and the mortgagee, in event the mortgage is foreclosed and the mortgagee becomes purchaser at the foreclosure sale. That is quite forcibly demonstrated here. At the time the mortgage involved in this case was executed and delivered the rights of the mortgagee under the mortgage and their existing provisions of law were: In case of default, the mortgage might be foreclosed by advertisement; the mortgagee had a right to purchase at the sale; if he purchased he would be entitled to receive from the tenant in possession of the property the rents, or the value of the use and occupation thereof, from the time of the sale until redemption was made; and if there was no redemption then during the period allowed for redemption. See, Geo. B. Clifford & Co. v. Henry, 40 N. D. 604, 169 N. W. 508. In this case there was a default. The power of sale was exercised. The mortgagee purchased at the foreclosure sale, and received the usual certificate of sale; but if chapter 132, Laws 1919, is applicable then it has taken away from the mortgagee the right to receive rent or the value of the use and occupation of the premises sold, and vested this right in the mortgagor's successor in interest. It would seem that if the legislature had intended that the striking change proposed to be made by chapter 132, Laws 1919, as regards the right to rent or the value of the use and occupation during the redemption period, should apply as well to mortgages then existing as to those thereafter made, it would have "expressly so declared."

Judgment affirmed.

BIRDZELL, Ch. J., concurs.

BRONSON, J. (concurring specially). I concur in an affirmance upon principles of law stated by the writer in his concurring opinion in E. J. Lander & Co. v. Deemy, 46 N. D. 273, 176 N. W. 927.

GRACE, J. (dissenting).  This appeal is from a judgment of the district court of McLean county.  The material facts are as follows: On September 28th, 1915, one Krupsky owned a quarter section of land in McLean county, North Dakota.  On that day he mortgaged it to the First National Bank of Turtle Lake for $1,100.  Subsequently the mortgage was foreclosed by advertisement, and the land sold to pay the mortgage debt, interest thereon, and costs of foreclosure sale.  The foreclosure sale occurred on the 20th day of June 1921.  The sheriff pursuant to law, sold the land for $1,983.87, a sum which paid the mortgage, the interest, and the cost of sale.  In other words, the full amount of the indebtedness.  At the sale, the land was purchased by the mortgagee, the plaintiff herein.

On September 16th, 1917, Krupsky mortgaged the land to this defendant.  Thereafter this mortgage was foreclosed, a sale had, the sheriff's certificate of foreclosure issued, which ripened into a right of sheriff's deed on January 4th, 1921.  The defendant took possession of the land and raised a crop thereon during the season of 1921.  The plaintiff brought this action for rents and profits.  It is claimed that the principal question of the case is the constitutionality of chapter 132, Session Laws of 1919, which provides as follows: "An act to amend and re-enact § 7762 of the Compiled Laws of North Dakota for the year 1913, relating to the rent, use, and benefit of property sold under execution or foreclosure sale.  Be it enacted by the legislative assembly of the state of North Dakota:

"Sec. 1. That § 7762 of the Compiled Laws of North Dakota for the year 1913 is hereby amended and re-enacted to read as follows:

"Sec. 7762. The debtor under an execution or foreclosure sale of his property shall be entitled to the possession, rents, use and benefit of the property sold from the date of such sale until the expiration of the period of redemption.

"Approved February 18, 1919."

The plaintiff claims the rents and profits under § 7762, Comp. Laws as it was prior to its amendment, which, so far as necessary to state here provides: "The purchaser from the time of the sale until a redemption and a redemptioner from the time of his redemption until another redemption is entitled to receive from the tenant in possession, the rents of the property sold, or the value of the use and occupation thereof."

This section refers to the alleged rights of the purchaser after a foreclosure and during the period of redemption.

Section 6740, Comp. Laws provides: "A mortgage does not entitle the mortgagee to the possession of the property, unless authorized by the express terms of the mortgage."

Section 8085, Comp. Laws provides: "The property sold may be redeemed within one year from the date of the sale in like manner and to the same effect as provided in chapter 12 of this Code for redemption of real property sold upon execution so far as the same may be applicable by:

"1. The mortgagor or his successor in interest in the whole or any part of the property.

"2. A creditor having a lien by judgment or mortgage on the property sold or on some share or part thereof, subsequent to that on which the property was sold. Such creditor is termed a redemptioner and has all the rights of a redemptioner under that chapter. And the mortgagor and his successors in interest has all the rights of the judgment debtor and his successor in interest as provided therein."

Upon sale of the real property a certificate of the officer making the sale must be issued immediately to the purchaser which shall contain a description of the property sold, the whole price paid, and the cost and fees of making the sale. The certificate must be acknowledged and may be recorded.

In this case, we will assume that the defendant is in the same position as if it were the original owner and the mortgagor of the land at the commencement of this action. Under § 6740 it will be seen that the mortgagee is not entitled to possession of the property mortgaged, unless it is expressly so provided in the mortgage. The mortgage here does not so expressly provide. In such circumstances, the meaning to be derived from the language of that section is, that the mortgagor or the owner of the land is entitled to possession of the land. This being true, the mortgagor or owner is also entitled to the use of the land or property during the period of redemption as provided by § 8085. But, it is claimed that the right to the use and profits during the period of redemption is taken away by § 7762, as it existed, prior to its amendment. This section will be given particular attention later in the opinion. It cannot be successfully denied that the right of possession of

the land during the period of redemption, coupled with the right and use of the profits thereof, during that time, are valuable property rights and are in fact valuable property, none of which the mortgagor or owner of the land parted with by any stipulation or agreement in the mortgage. Neither can it be denied that the law providing for a period of redemption contemplates that the mortgagor or owner shall have the use and profits of the land during that time, for this may perhaps be the very means of preventing the loss of his property by foreclosure.

The first question, which we will here examine, is not a constitutional one. Whatever we have to say with respect to any constitutional question will receive attention later. The question which we desire first to examine is that of payment. The relation established between plaintiff and the mortgagor or owner of the land by the mortgage was that of debtor and creditor. When the mortgage was foreclosed and a sale of the land effected by reason of that foreclosure, that relation ceased at the completion of the sale and thereafter the relation was that of purchaser and owner. At the plaintiff's foreclosure sale of this land, the land was sold for an amount sufficient to pay in full the mortgage, all of the interest thereon and all costs of foreclosure. Hence, the mortgage debt was fully paid. It makes no difference that the mortgagee was the purchaser; he stands in exactly the same position as if a stranger had been the purchaser, instead of the mortgagee. By the sale of the land in the above manner and for the above amount, the land was discharged from the lien of the mortgage and the purchaser received a sheriff's certificate, which at the expiration of the period of redemption, and if no redemption were made, entitled it to a sheriff's deed, conveying to it a fee title thereof. It received the deed January 4th, 1921.

The court held in Geo. B. Clifford & Co. v. Henry, 40 N. D. 604, 169 N. W. 508, that the lien of the mortgage still continued after the foreclosure sale. This holding is clearly erroneous, as will be shown by the language of the Supreme Court of the United States in the case of Hooker v. Burr, 194 U. S. 415, 48 L. ed. 1046, 24 Sup. Ct. Rep. 106, where it was said: "It is seen that the amount due on the mortgage in question at the time of the sale upon foreclosure was $6,782.49, and that the property sold for $9,500. That amount was paid by the purchaser to the sheriff, and it resulted in the payment of the mortgage debt, principal and interest, and the release of the land from the lien of the mort-

gage. Subsequently to that payment the mortgagee had no interest in further proceedings."

We think it is clear that where the mortgage debt, the interest thereon, and the costs of foreclosure sale have been paid to the mortgagee that he has no further claim upon the mortgaged property; or if he is the purchaser, and bids the full amount of the debt, interest and costs, that he has no other right than to receive the fee title to the property mortgaged and described in the mortgage, if a redemption, as provided by law, is not made within the time specified by law. We think what has been said is sufficient to dispose of plaintiff's claim to the rents, profits, or crops grown on the land during the period of redemption adversely to him. It is not really necessary to consider here any constitutional question, but, as the constitutional question here presented is one that both sides desire should have some consideration, we have no hesitancy in discussing it to some extent.

It is claimed that chapter 132, supra, if held to be constitutional, impairs plaintiff's contract, the mortgage, and that it purports to take away from him a right claimed by him under § 7762, that is, the right to the rents and profits, including in a case like this, the crops of grain grown on the land during the period of redemption. If it were true, and we do not think it is (which we will later show), that plaintiff had the right under § 7762 to the rents, profits, and crops of this land during the period of redemption and if chapter 132 impaired the obligation of his contract with reference to those rights, he is not injured thereby, since by the foreclosure sale under his mortgage, he has realized the full amount of his debt, principal, interests and costs, by receiving a sheriff's certificate of the land described in the mortgage, through which at the expiration of the time of redemption, if no redemption is made, he receives the title of the property. And as we have before stated, it makes no difference whether a stranger purchased the property at the foreclosure sale for the full amount of principal, interest and costs, or whether the mortgagee does the same thing. Their rights as purchasers by reason of such purchase are similar. Hooker v. Burr, supra.

There is another reason why plaintiff is not entitled to the rents, profits, and the crops. It is this. We think that, that part of § 7762, above set forth, is unconstitutional.

1. Because the legislature was without power to enact it.

2. Because it is contrary to the 14th Amendment of the Constitution of the United States, in that it takes property from the mortgagor or the owner without due process of law.

3. That it denies the mortgagor or owner of the property, equal protection of the law, the law itself being only a penalty to compel the payment of the debt.

In the case of Davis v. Wallace, 257 U. S. 478, 66 L. ed. 325, 42 Sup. Ct. Rep. 164, decided at the October 1921 term of the Supreme Court of the United States the court said: "The case made by the bill involved a real and substantial question under the Constitution of the United States and the amount in controversy exceeded three thousand dollars, exclusive of interest and costs, so the case plainly was cognizable in the district court. In such case the jurisdiction of that court, and of ours in reviewing its action, extends to every question involved, whether of Federal or of state law, and enables the court to rest its judgment or decree on the decision of such of the questions as in its opinion effectively dispose of the case."

So in the case now before this court, where the constitutionality of chapter 132 is challenged, any question or any principle of law which will tend to show either that the statute (chapter 132) is or is not constitutional, is pertinent. In this view, we are justified in examining the constitutionality of that part of § 7762, above mentioned. We have before stated, and it is true, that the right of possession and of the rents, profits, and crops raised upon the land during the period of redemption, are valuable property rights which belong to the mortgagor or owner. Section 7762 without any consent of the mortgagor or owner and without any authority under the Constitution or otherwise, and contrary to our Constitution and the Federal Constitution, by this enacted law, attempts to take the private property of one individual citizen and hand it over to another.

In 6 R. C. L., page 310, in § 297, it is stated: "The state cannot, by a mere act of the legislature take property from one man and vest it in another directly." It is further stated that "a statute would be unconstitutional which in effect, either by legislative fiat or by direct or indirect operation should take the property of one man and give it to another." Citing cases in the notes. The section further states: "There is probably no instance in the history of the American common-

wealths of an attempt by a legislature to deprive any citizen of his property for the avowed purpose of giving it to another; but many statutes have been attacked on the ground that they operate to produce that unjust and unlawful result, and some of these attacks have been successful." Yet, that is just what has in effect been attempted by § 7762, the mortgagor or owner is deprived of the rents, profits, and crops of the land during the period of redemption, though they are not mentioned in nor included in the contract, the mortgage.

The Geo. B. Clifford & Co. v. Henry Case, supra, illustrates what may occur under this section. Henry purchased a section of land for $22,400. He paid $5,000 cash. The balance of the purchase price was divided into sixteen annual payments of $1,000 each and one of $1,400, with interest at 6 per cent secured by a mortgage on the land. Default was made in some of the payments and the whole sum secured by the mortgage declared due; the mortgage foreclosed and the land sold at a foreclosure sale for $19,297.82, the total of principal, interest, and costs of foreclosure. But the mortgagee was not satisfied with the payment of his debt. It wished also to recover the value of the occupation during the year of redemption, which included the value of the crops on the premises. It brought suit for $5,000, and recovered $960. If the crops had been worth $5,000, on the theory of that case, the plaintiff there would have recovered that amount and in such case the law would have taken $5,000, of defendant's money and given to plaintiff without any other authority than that of § 7762, there being no agreement in that mortgage that the mortgagee was entitled to the rents, profits, or crops. We think a law that prescribes this may be done, is unconstitutional, and hence, § 7762 which takes the private property of one person and gives it to another, we think, is unconstitutional, either under the Federal or state Constitution. If § 7762 is unconstitutional the plaintiff may not be heard to assert any rights under it. If it is unconstitutional, and we believe it is, no question can arise concerning the unconstitutionality of chapter 132, as it accords to the mortgagor or owner, only such rights as are his under the right of redemption, that is, the rights of possession and the use and ownership of profits of the property mortgaged or crops raised thereon during that time.

Considering the second and third reasons of the unconstitutionality of this section, we think it is clear that § 7762 takes the mortgagor's or owner's property without due process of law and denies him the equal protection of the law. 6 R. C. L. page 442, § 438 says: "As has already been seen the principle of due process of law has its origin in England, as a protection to individuals from arbitrary action on the part of the Crown. It has been said that in this country the requirement is intended to have a similar effect against legislative powers, that is, to secure the citizen against any arbitrary deprivation of his rights, whether relating to his life, his liberty, or his property. It is a limitation upon arbitrary power, and is a guaranty against arbitrary legislation. The primary purpose of the guaranty was the security of the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice." See also notes to the section. Section 7762 is an arbitrary taking of the mortgagor's or owner's property and is without any due process of law. Furthermore, that section is simply a penalty upon the mortgagor or owner to compel payment of the debt and for that reason is not due process of law. Gulf, C. & S. F. R. Co. v. Ellis, 165 U. S. 150, 41 L. ed. 666, 17 Sup. Ct. Rep. 255; Chicago & N. W. R. Co. v. Nye Schneider Fowler Co. 260 U. S. 35, 67 L. ed. 115, 43 Sup. Ct. Rep. 55, decided at the October 1922 term of the United States Court.

But, if § 7762 were not unconstitutional—though it seems clear that it is for the reasons above given—still we think plaintiff could not invoke the contract impairment clause of the Federal Constitution, and this for the reason that the origin of the right that he claims, is wholly statutory. It is claimed, asserted, and based wholly on § 7762, and hence cannot be based upon the contract, the mortgage. In such case, the United States Supreme Court in the case of Crane v. Hahlo, 258 U. S. 142, 66 L. ed. 514, 42 Sup. Ct. Rep. 214, held that there is nothing for the contract impairment clause of the Constitution to operate upon.

ROBINSON, J. (dissenting). In this case the question presented is on the right of a mortgagee, or his assignee, to possession of land during the year of redemption. It is true that by statute it is provided that the purchaser of land at an execution sale, until a redemption, is entitled to receive from the tenant in possession the rents of the property

49 N. D.—30.

sold or the value of the use and occupation thereof. Comp. Laws 1913, § 7762. But that section has not the least application to a foreclosure sale. I regret that courts are too much disposed to follow erroneous precedents and in that way to strain the law, oppress the poor, and aid one party in robbing another. Such was the decision, by one majority, in case of Geo. B. Clifford & Co. v. Henry, 40 N. D. 605, 169 N. W. 508. To avoid the recurrence of similar decisions, and to guard against the Shylock tendency of the creditor to oppress debtors, the writer drafted and secured the passage of chapters 130, 131 and 132, Laws 1919. Each act was in keeping with the other, and each was plainly intended to apply to any and all foreclosure sales after the act took effect.

Chapter 132 reads:

"The debtor under an execution or foreclosure sale of his property shall be entitled to the possession, rents, use, and benefits of the property sold from the date of such sale until the expiration of the period of redemption."

The purpose of each chapter was to give full and immediate relief against oppression and against the effect of erroneous decisions. Neither act is intended as a mockery of debtors.

Chapter 130 declares that on any foreclosure by advertisement the attorney's fee shall in no case exceed $25, and in no case more than 10 per cent of the principal sum actually due.

Chapter 131: That no action or proceeding shall be commenced to foreclose a mortgage on real property without first giving to the mortgagor thirty days' notice.

Chapter 132: That the debtor shall be entitled to possession, rents and profits during the year of redemption.

Each act is remedial and should be so construed as to advance the remedy and to give effect to the purpose of the act. Neither act contains a redundant word. The necessity for each act was manifest, pressing, urgent, and immediate. Hence, there is no fairness in saying that to each act the legislature should have added a declaration that it should apply to all past, as well as to all future, mortgages.

A mortgage is merely a lien on property. There is nothing in any statute which gives to a mortgagee of land any title or possession until after the year of redemption and until he obtains a sheriff's deed. Neither in the notice of foreclosure sale nor the certificate of sale is

there a thing to indicate that the purchaser buys any title or possession or rents before receiving the sheriff's deed.

But it is said that if the act applies to past mortgages, it may impair the obligations of contracts. That is based on a mere assumption. A mortgage is a mere lien. It does not entitle the mortgagee to possession of the property unless authorized by the express terms of the mortgage. Sec. 6740. A contract for a lien transfers no title. Sec. 6708. Neither possession nor title is given by the foreclosure sale. That is given only by the sheriff's deed. Sec. 8106.

Another answer is that there is no contract or law giving the mortgagee or purchaser at foreclosure sale possession or title prior to a sheriff's deed. There is no proof that the land itself is not worth much more than the mortgage debts. Were the debt insecure, then the mortgagee had a right to apply to the court for a receiver. That was his remedy. When the land is ample security for a mortgage debt, regardless of possession, it is vain to say that the security is impaired by possession of the mortgagor during the year of redemption. There is no reason for giving a Shylock construction to the statute in question, because it is not within either the letter or the spirit of the law. The act expressly applies to every sale made after it becomes a law.